Ruth **HIRONYMOUS,** Castlemont Properties, d/b/a The Lock–Up Mini Warehouses and Ronald K. Lindsay, Individually and as Trustee for Lindsay Family Trust, d/b/a The Lock–Up, Appellants,

v.

James Douglas **ALLISON,** Jr. and Diana Wallen Allison, Appellees.

No. 13–93–486–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 8, 1994.

Rehearing Overruled Jan. 5, 1995.

**580**

Katherine D. Mackillop, Fulbright & Jaworski, Houston, Frank Jelinch, Jelinch & Rendler, Cupertino, CA, for appellants.

Derrel Luce, Waco, for appellees.

Before KENNEDY, FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

KENNEDY, Justice.

James Douglas Allison and Diana Wallen Allison sued for damages resulting from the appellants' wrongful sale of their property from appellants' storage facility. The court awarded the Allisons more than a million dollars in actual damages, exemplary damages and attorneys' fees. By five points and one cross-point of error, the appellants and the appellees challenge the judgment; the appellants also challenge a stipulation of attorneys' fees. We affirm in part and reverse in part.

Ronald K. Lindsay was trustee for the Lindsay Family Trust, which owned the Lockup Mini–Warehouses. The Trust hired Ruth Hironymous to manage the Lockup. Her husband, Robert, and son, Jesse helped her. Ruth Hironymous was an agent of Castlemont Properties, a sole proprietorship owned by Lindsay.

The Allisons left property in the Lockup in June 1989. They lived in Sugarland, Texas in a rental house at the time. That month, James's employer transferred him temporarily to Sulphur, Louisiana. In December, they moved to land they bought in Damon, Texas. Despite having signed an agreement that they would inform the Lockup in writing of address changes, the Allisons never did. They claimed to have given oral notice, however.

The Allisons were also irregular with their rent payments. They were late in July, August, September, November, and December. In December, as it had in July, the Lockup sent a notice of intent to sell to the Sugarland address. It was returned stamped Addressee Unknown.

Jesse and Ruth Hironymous then cut the lock on the storage unit to make an inventory without entering the unit. They then relocked the unit with a company lock tagged with a request that the tenant come to the office.

The Allisons paid the past-due rents on December 15, 1989. Mrs. Hironymous deleted the Allisons's unit from the list to be advertised for auction, but forgot to remove it from the delinquency list. Robert used the list to hold an auction. He sold the entire contents to Bruce Winkle on January 3, 1990 for $345. The Allisons paid the January rent on January 5.

The mistake was discovered on January 23, 1990 when Mrs. Allison came to get some items from the unit. Everyone was upset. The Hironymouses called Winkle to try to

retrieve the items, but he had already disposed of most of it. They did not disclose his identity to the Allisons despite their repeated requests.

The Lockup sent the Allisons a $405 check, covering the sale price of the items and the January rent payment. The Allisons prepared and sent an inventory of items lost in the sale. At trial, they valued those items at $70,000.

At trial, the appellants stipulated to liability for negligence, conversion, and breach of contract at the close of evidence. The jury found the value of the household goods, clothing, and personal effects was $105,000. They valued the memorabilia at $250,000. They found gross negligence by both Ruth Hironymous and Lindsay. They awarded exemplary damages of $10,000 against Hironymous and $500,405 against Lindsay. The parties stipulated that the attorneys' fees awarded should equal forty percent of the total award entered by the jury.

The court granted a judgment notwithstanding the verdict against the finding of gross negligence by Lindsay. The court nevertheless held him vicariously liable for exemplary damages based on Ruth Hironymous's status as a manager acting while in the scope of her employment. The result was joint and several liability by Ruth Hironymous and Lindsay for $493,895.13 in actual damages and prejudgment interest, $346,162 in attorneys' fees, and individual liability for the exemplary damages set out above.

On appeal, the appellants challenge the legal and factual sufficiency of the evidence to support various jury findings. They also attack the attorneys' fee award in the event the damage award is reduced. They do not challenge any of the jury instructions.

■ The appellants launch two points of error against the actual damages award. By point five, they contend that the court's failure to order a new trial or remittitur of actual damages award is error because the award includes $35,000 for obtaining, moving, and refurbishing household goods and personal effects; the appellants contend that such costs are not recoverable and render the award grossly excessive and supported by factually insufficient evidence. We can consider the original cost, the replacement cost, the opinions of qualified witnesses (including the owner), and any other relevant factors. *Allstate Ins. Co. v. Chance,* 590 S.W.2d 703, 703–04 (Tex.1979) (per curiam). If no market exists where the goods were damaged, the jury can consider the value at the nearest market and the cost of transportation to that market. *Atchison T. & S.F. Ry. Co. v. Nation & Slavens,* 92 S.W. 823, 827–828 (Tex.Civ.App.1906, writ denied). In *Nation & Slavens,* cattle were damaged in shipping to a place where they had no market value. The court held that the parties could put on evidence of value at the nearest market together with transportation costs to that market to determine market value at the place of injury. Though the *Nation & Slavens* case deals with goods for sale rather than goods owned, it has some application here. The Allisons claimed to have lost a variety of antiques, collectibles, and homemade crafts. Their list includes bullets, knives, fruit jars, autographed baseballs, oil lanterns, toys, straight razors, signs, cooking utensils, dishes, furniture, and other items from various non-chain store sites in Texas, Oklahoma, and Tennessee. Mr. Allison testified that they collected the items over fifteen years of travel to various flea markets and antique dealers. He estimated that it would take $35,000 in travel to reassemble their $70,000 worth of property.

■ We hesitate to approve this measure of damage. We foresee an onslaught of trial claims for everything from vacation expenses to gasoline money to the nearest appliance store. Defendants are not totally helpless against such claims, however. They can bring out on cross-examination or through other witnesses and evidence the availability of similar merchandise closer to home and the unreasonableness of the claimed expense. They can also adduce evidence on issues such as other benefits gained from travel expenses or methods of purchase less expensive than recreating a vacation. We find that, if claimants can prove that the travel expenses are a necessary cost of replacing lost property, they can recover the expenses. We overrule point five.

The appellants challenge the factual sufficiency of both actual damage awards. They contend that the trial court should have ordered a new trial or remittitur of the $105,000 award for loss of household goods, clothing, and personal effects and the $250,000 award for loss of memorabilia.

In reviewing a challenge to the factual sufficiency of the evidence, we look at all of the evidence both favoring and opposing the jury's determination. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1990). We review the evidence, keeping in mind that it is the jury's role, not ours, to judge the credibility of the evidence, to assign the weight to be given to testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Corpus Christi Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 197 (Tex.App.—San Antonio 1991, no writ) (citations omitted). Having done so, we will set aside the verdict only if the evidence standing alone is too weak to support the finding, or the answer is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

The court instructed the jury that it could measure the value of the household goods, clothing, and personal effects by their value to the users as specially adapted to their needs. *See Crisp v. Security Nat'l Ins. Co.*, 369 S.W.2d 326, 328 (Tex.1963). The Allisons adduced evidence that they valued their goods at $70,000 and would require an additional $35,000 for the effort in replacing them. The jury awarded $105,000.

To support their valuation of the goods, the Allisons provided an inventory of items they claim were sold. They set out the original cost where they could remember and estimated the replacement cost of each item where replaceable. Besides the collectibles discussed above, the inventory included a refrigerator, freezer, microwave oven, table, trunks, hunting gear, office supplies, sporting goods, tools, craft supplies, and other items. Mr. Allison said that they were experienced at using storage facilities and packed their room well. He testified that he put his more valuable items in the back of the room and tried to obscure them with piles of less valuable items. He estimated that they filled about two-thirds of the 12×10×11 room. The combined estimated values of the items totalled approximately $70,000. Mrs. Allison testified that she had found that they had overvalued the smoke detectors and erroneously placed another item on the list. She also testified about other items that should have been on the list but were not. She testified that the values of the overbilled and unbilled items about balanced.

The Allisons' friends and relatives provided some proof of their losses. Pictures from friends and relatives showed the manner the Allisons furnished their previous homes. The Allisons showed a videotape of their Sugarland home. Friends testified that the items present in their previous homes (including Sugarland) were not in their current home. The testimony of Roy Jones, who had sold Allison some of his knife collection, supported the valuation of the collection at $20,000.

The appellants challenge the Allisons' evidence on many fronts. They attack the valuation of used appliances at replacement cost such as the waffle iron, bought for $10 and valued at $49.86, and the refrigerator, bought at $300 and valued at $649.99. They complain of items listed but not used, such as contact lenses not worn because of eye irritation and a fishing seine never unrolled. They attack the valuation of a Raggedy Ann and Andy purchased for seventy cents but valued at $1,500. They challenge the antique ice chest valuation—purchased for $200, valued at $2,000, and sold by Winkle at $300–350.

Winkle dismissed most of the Allisons' belongings as junk. He testified that the contents of the room filled only half of his sixteen-foot-long, four-foot-walled trailer. He said that after purchase he went through every box and did not find most of the items listed in the inventory. He said he did not find the rifle scopes, binoculars, major appliances, the Raggedy Ann and Andy dolls, the Hank Aaron-autographed baseball, the table, benches, display cases, straight razors, an-

tique tools, and other items. He also disputed the nature of some other items; e.g. he found some cheap pocketknives but not a $20,000 knife collection, found some old golf clubs but not a set of Ping clubs, found some books but not Zane Grey books, and found some, but not nearly all, the ammunition claimed by the Allisons. He testified that all of the claimed items would have filled his trailer two or three times over. He attempted to return the antique ice chest, but the Allisons declined asserting that it had been damaged. He testified that he made about $1,000 from the sale of the Allisons' property.

The Hironymouses themselves deny that some items were even in the room. Jesse and Ruth Hironymous testified that they took an inventory of the room in December when preparing to sell the contents. They did not enter the room, but found that it was only half to two-thirds full. They did not see many of the claimed items. Jesse testified that Mr. Allison told him upon renting the room that he declined to buy insurance because he had nothing worth insuring; Mr. Allison denied ever saying that.

The Allisons' testimony regarding the $35,000 in travel expenses is essentially unopposed.

The testimony is largely diametrically opposed. The Allisons' witnesses saw fine robes where the appellants' witnesses saw only nakedness. We were not at trial to see the parade of evidence. Appellants ask in their brief what the value is of things such as old sewing patterns, an unused contact lens, and outgrown toys. It is not our role to decide. In a case with such strongly conflicting evidence, we must defer to the factfinder. We can only review the evidence to see if it supports the factfinder's decision. We find that factually sufficient evidence supports the actual damage award for the household goods.

■ The court instructed the jury to measure the value of memorabilia by the reasonable special value of the item to the owner, taking into consideration his or her feeling for the property. *See Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299, 305 (Tex. 1963). The appellants, to their credit, expressly challenge only the size of the award, not its existence. They contend that the award is too large based on the testimony supporting it, the size of the other damage awards, and the comparison to damage awards in other cases.

■ We find little value in the appellants' urge to compare. We find no value in comparing the various damage awards in this case; if the court asked the jury for separate damage awards for a head injury and a broken arm sustained in the same accident, we would not compare the awards. Different losses may require vastly different damage awards. The inter-case comparisons that the appellants urge are to cases with such vastly different types of injuries and fact patterns that we do not find them useful in assessing damages that are so specific to the individual.[1]

The Allisons testified that the sale deprived them of most of the memorabilia of their sixteen-year marriage. Among the items lost were baby pictures, wedding pictures, a national championship archery trophy, an invitation to train for the Olympic archery team, sketches by Mrs. Allison's now-deceased father, and a bait bucket specially prepared by Mr. Allison's father to mend a rift at Christmas. They claimed a loss of $420,000.

The jury could find that Mrs. Allison's response to the loss demonstrated her deep attachment to the items. At the time of trial, she was being treated with psychotherapy and medication for depression and post-traumatic stress disorder. Her treating psychiatrist, who testified that he does not make

---

1. They urge comparison to *Transco Leasing Corp. v. United States,* 896 F.2d 1435, 1455 (5th Cir. 1990) ($250,000 is maximum affirmable recovery by parent for loss of a minor child); *Ford Motor Co. v. Durrill,* 714 S.W.2d 329, 345 (Tex.App.—Corpus Christi 1986) (reducing jury award to parent for death of child to $300,000 *vacated per* agreement, 754 S.W.2d 646 (Tex.1988); *Caterpillar Tractor Co. v. Gonzales,* 599 S.W.2d 633 (Tex. Civ.App.—El Paso 1980, writ ref'd n.r.e.) ($252,991.05 award for lost earnings, pain and expenses to worker who needed surgery for disc removal and could only perform sedentary work).

such a diagnosis casually, traced her symptoms to the sale of the goods.

We find that factually sufficient evidence supports the award of $250,000 for the loss of memorabilia. We overrule point of error four.

By point of error one, the appellants contend that the court erred in awarding exemplary damages because no or factually insufficient evidence supports the jury's gross negligence findings. The jury found gross negligence by both Lindsay and Mrs. Hironymous. The court granted a judgment notwithstanding the verdict as to Lindsay. The appellants challenge the findings as to both, while the Allisons challenge the court's decision as to Lindsay.

■■■■ To review the "no evidence" challenge, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences contrary to the findings. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992); *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex. 1990). *Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex.1986). We must affirm the jury's verdict where any evidence of probative force upholds the finding. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989); *Navarette,* 706 S.W.2d at 309. This test applies to gross negligence. *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 327 (Tex.1993).

■■■■ The test for gross negligence is in two parts:

> (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994). Gross negligence is more than mere thoughtlessness or carelessness. *Id.* at 22. The court also wrote that "[t]he requirement of conscious indifference, which our law requires, is superfluous unless it requires proof that the defendant

had actual subjective knowledge of an extreme risk of a serious harm." *Id.*

■■■■ We find the evidence legally insufficient to support a finding on the second prong. The *Moriel* test requires a showing of *awareness* of an extreme risk of a *serious* harm. One might interpret the complete loss of any property to be the most serious harm possible to the right to that property. Based on the supreme court's application of the law to the facts in *Moriel,* we find that they meant awareness of a less abstract, more pecuniary measure of seriousness in a case like ours. *See id.* at 25–26. The supreme court held that, though the insurance company caused Moriel substantial mental anguish, he had not shown that they were actually aware of the risk of inflicting that harm. *Id.* at 26.

A warehouse owner must know that the selling of property terminates the owner's property rights. Loss of replaceable goods—e.g., appliances, many dishes, much furniture—is not the requisite serious harm. Such losses are readily compensable and rectifiable. Though the loss as to the specific appliance may be irredeemable, appliances are essentially interchangeable. To support the finding of gross negligence here, the appellants would have to have subjectively understood the existence of the risk of losing difficult-to-replace material goods and irreplaceable memorabilia.

There is no evidence whatsoever that Mrs. Hironymous or Mr. Lindsay had any idea of the enormity of the Allisons' potential loss. There is no evidence they were told of the special contents of the warehouse. The evidence showed that Mrs. Hironymous summarily inspected the goods when preparing for the sale, but the only evidence is that she saw nothing of significant or unusual value. There is no evidence that Mr. Lindsay saw the contents. Without awareness of the risk, the appellants could not act with conscious indifference to it.

Our conclusion does not remove a deterrent to warehouse owners from wrongfully selling people's belongings. The litigation itself is a deterrent of sorts. *Id.* at 26, n. 21. The actual damage award for memorabilia,

particularly, compensates the plaintiffs while assessing damages against the defendants that they cannot recover from the sale of same. (In this case, much of the memorabilia was simply tossed in the dump where some of it was recovered.) We sustain point one. We overrule the crosspoint.

We do not find remand in the interest of justice as in *Moriel* because the court here sufficiently instructed the jury on the need for proof of the basis of our reversal, actual conscious indifference. We need not consider points two and three, which challenge the amount of exemplary damages. No exemplary damages are appropriate.

 By point six, the appellants challenge the rendition of attorneys' fees based on the stipulation reached at trial. The Allisons' attorney stated on the record as follows:

> It has also been stipulated that attorneys services were necessary in this case and that the reasonable amount of such services will be forty percent of the total award entered by the jury in this case.

The court accordingly entered judgment awarding $346,162 in attorneys' fees based on the $865,405 in actual and exemplary damages found by the jury. The appellants contend that if, as has occurred, we eliminate any of the damages, the award would violate public policy as stated in the disciplinary rules. Indeed, our elimination of the exemplary damage awards of $510,405 has reduced the total pre-interest damage award to $355,000. Forty percent of $355,000 is $142,-000. Under appellants' theory, we would reduce or suggest reduction of the attorney's fee award to that level. We decline to do so.

The appellants did not preserve their complaint about attorneys' fees in any way at trial. Their complaint does not raise fundamental error. They contend that the stipulation is a void contract because it awards too high a percentage of damages as an attorneys' fee. Their argument ignores that the rules regarding contingency fees were designed to protect parties from being locked into a contract with an attorney taking too large a share of their damages. Here we have an agreement between parties regarding the calculation of an award of attorneys'

fees in addition to damage awards. The plaintiff's recovery of damages is not adversely affected by the fee award. The policy concerns behind regulation of contingency fees do not apply. There is no fundamental error. We overrule point six.

We reverse and render that the Allisons recover no exemplary damages. We affirm the judgment in all other respects.