In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-06-00051-CV
______________________________

CHECK #21554 ISSUED BY
ROBERT CALLAWAY, ET AL., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee

                                              

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2005-2562-CCL2

                                                 

Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross

MEMORANDUM OPINION

          The State of Texas began proceedings in which it sought the forfeiture of check
number 21554 issued by Robert Callaway Duncanville Ford in the amount of $5,000.00. 
See Tex. Code Crim. Proc. Ann. arts. 59.02, 59.04 (Vernon Supp. 2005). The Smiths
unsuccessfully sought to stay the forfeiture proceedings until disposition of any pending
criminal matters in connection with the property. The Smiths' notice of appeal clearly
identifies the order from which they attempt to appeal: "In particular[,] Defendant seeks
an Appeal of the Court's failure on April 3, 2006, to Stay the pending Quasi-Criminal /Civil
matter." Such order is interlocutory in nature.
          Generally, a Texas appellate court has jurisdiction to hear an appeal only if it is from
a final judgment. See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992). An
appellate court has jurisdiction to consider immediate appeals of interlocutory orders only
if a statute explicitly provides appellate jurisdiction. See Stary v. DeBord, 967 S.W.2d 352,
352–53 (Tex. 1998); Longview Indep. Sch. Dist. v. Vibra-Whirl, Ltd., 169 S.W.3d 511, 515
(Tex. App.—Texarkana 2005, no pet.). The Texas Civil Practice and Remedies Code
outlines interlocutory orders over which we have jurisdiction. See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014 (Vernon Supp. 2005). Section 51.014 does not provide this Court with
jurisdiction over an appeal from an order denying a motion to stay forfeiture proceedings,
and we have found no other specific statutory provision that would permit this Court to
review this order. That being the case, this order is an unappealable interlocutory order
over which we have no jurisdiction.
          Accordingly, we dismiss this case for want of jurisdiction.
 

                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      June 12, 2006
Date Decided:         June 13, 2006

f his then-existing state of mind during the theft, but rather Wren's version
of past events. (2) As such, the trial court did not abuse its discretion in excluding Johnson's testimony.

 The Estate also sought admission of two e-mails written by Wren to his daughter which read,
"I found my worksheet for April 13 and it appears I put a manager lock on it because it had the
customer lock missing," and "Jason gave the Bastinellis' contact info and [the police] said they
would contact them. Jason [the manager] said he could handle it and [the police] said they would
contact them." The Estate claimed the e-mails should also be admitted under the state-of-mind
exception to the hearsay rule. The letters were both written after suit was filed and, by admission
of Wren's wife, in anticipation of litigation. Thus, rather than spontaneous statements about Wren's
state of mind existing at the time of the theft, these e-mails depicted his version of past events, and
would not qualify under Rule 803(3) as exceptions to hearsay.

 Next, the Estate sought to admit the e-mails under the business records hearsay exception. 
Rule 803(6) exempts from hearsay a 

data compilation, in any form, of acts, events, conditions, opinions, or diagnoses,
made at or near the time by, or from information transmitted by, a person with
knowledge, if kept in the course of a regularly conducted business activity, and if it
was  the  regular  practice  of  that  business  activity  to  make  the  .  .  .  data
compilation . . . unless the source of information or the method or circumstances of
preparation indicate lack of trustworthiness.

Tex. R. Evid. 803(6). E-mails written in preparation of litigation indicate a lack of trustworthiness
and do not qualify as business records under the above rule. Sessums v. State, 129 S.W.3d 242, 249
(Tex. App.--Texarkana 2004, pet. ref'd) (citing Freeman v. Am. Motorists Ins. Co., 53 S.W.3d 710,
714-15 (Tex. App.--Houston [1st Dist.] 2001, no pet.)). Here, there was no testimony suggesting
that records similar to the e-mails were kept in the ordinary course of business. The e-mails were
prepared after Wren received notice of a claim and contained the subject line "Suit." By Wren's
wife's admission, they were created specifically to prepare for defense of the Bastinellis' claims and,
thus, could not qualify as business records for evidentiary purposes. We conclude that the trial court
did not abuse its discretion in deciding that the e-mails constituted inadmissible hearsay. This point
of error is overruled. 

(2) No Evidence Supported the Finding of Gross Negligence

 The Estate asserts that the evidence is legally and factually insufficient to support the jury
finding of gross negligence. Because we are bound by statutory and caselaw definitions of gross
negligence, and because the statutory definition of gross negligence was submitted to the jury in this
case and is not attacked as being inapplicable, we agree.

 The test for legal sufficiency is "whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review." City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005). When assessing the Estate's "no evidence" challenge to the legal sufficiency of
the evidence, we will consider only the evidence and inferences that tend to support the finding of
gross negligence and will disregard all evidence and inferences to the contrary. Hooper v.
Smallwood, 270 S.W.3d 234, 240 (Tex. App.--Texarkana 2008, pet. denied); Kinder Morgan N.
Tex. Pipeline, L.P. v. Justiss, 202 S.W.3d 427, 437 (Tex. App.--Texarkana 2006, no pet.) (citing
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001)). As long as the evidence falls within the zone
of reasonable disagreement, we will not substitute our judgment for that of the juror. Hooper, 270
S.W.3d at 240. 

 On the other hand, if there was a complete absence of evidence of a vital fact, if the court
was barred by rules of law or of evidence from giving weight to the only evidence offered to prove
a vital fact, if the evidence offered to prove a vital fact was no more than a mere scintilla, or if the
evidence conclusively established the opposite of the vital fact, a no-evidence point will be sustained.
Justiss, 202 S.W.3d at 437 (citing Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334
(Tex. 1998)). More than a scintilla of evidence exists if it furnishes some reasonable basis for
differing conclusions by reasonable minds about the existence of a vital fact. Id. (citing Rocor Int'l,
Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002)). 

 When the factual sufficiency of the evidence is challenged, we determine whether the verdict
was against the great weight and preponderance of the evidence. Hooper, 270 S.W.3d at 240 (citing
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); In re Estate of Steed, 152 S.W.3d 797,
806 (Tex. App.--Texarkana 2004, pet. denied)). In conducting this factual sufficiency analysis, we
weigh all the evidence, and will only set aside the verdict if it is so contrary to the overwhelming
weight of the evidence that the verdict is clearly wrong and unjust. Justiss, 202 S.W.3d at 437
(citing Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998); Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986)). Since we are not a fact-finder, we will not pass on the witnesses' credibility
or substitute our judgment for that of the jury, even if the evidence would clearly support a different
result. Id. (citing Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003); Ellis,
971 S.W.2d at 407). 

 Gross negligence includes both an objective and subjective element. (3) Tex. Civ. Prac. &
Rem. Code Ann. 41.001(11) (Vernon 2008). It is an act or omission "which when viewed
objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree
of risk, considering the probability and magnitude of the potential harm to others." Id. "Extreme
risk" is not "a remote possibility of injury or even a high probability of minor harm, but rather the
likelihood of serious injury to the plaintiff." Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778,
785 (Tex. 2001). Also, the act or omission must also be one where "the actor has actual, subjective
awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights,
safety, or welfare of others." Id. Thus, the risk must be proven with two elements, a likelihood
element and a seriousness-of-injury element; and the proof must show the actor is aware of both
elements. (4)

 The Bastinellis' storage unit was broken into in April 2005. Wren owned and operated the
storage facility. The evidence established that he was aware a criminal actor broke the lock on the
Bastinellis' unit and that Wren, despite having the Bastinellis' telephone numbers, failed to contact
them. (5) As a result, the unit was without a lock for several months. From this flowed the theft of the
Bastinellis' property in July 2005.

 Given the evidence, a reasonable jury could have determined that failing to contact the
Bastinellis or otherwise providing for security for their unit involved a high likelihood of loss or
damage. The jury could also have found that Wren was subjectively aware of the risk but did not
care about it. Agruim U.S., Inc. v. Clark, 179 S.W.3d 765, 767 (Tex. App.--Amarillo 2005, pet.
denied) (quoting Diamond Shamrock Refining Co. v. Hall, 168 S.W.3d 164, 173 (Tex. 2005)). This
satisfies the high-likelihood-of-loss element. 

 Missing, however, are the elements of serious harm and Wren's awareness of a prospect for
serious harm. While there is proof that much property was lost--and we do not minimize the impact
of that loss to the Bastinellis--the loss was not of the type required by Texas Supreme Court
precedent. As that court has said, "[e]xtreme risk" also requires "the likelihood of serious injury to
the plaintiff," a risk of which the defendant must have been aware. Harrison, 70 S.W.3d at 785. It
is insufficient to show a high likelihood of minor harm. Id. 

 An analogous situation was presented in the case of Hironymous v. Allison, 893 S.W.2d 578
(Tex. App.--Corpus Christi 1994, writ denied). In that case, owners of personal property sued the
manager of a storage warehouse for wrongful sale of their property, including appliances, dishes, and
furniture. Id. at 580. In addressing the serious harm element, the court stated that, while "[o]ne
might interpret the complete loss of any property to be the most serious harm possible," the items
lost were replaceable, and the property loss could not be considered serious harm. Id. at 584 (citing
Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994). (6) Rejecting the owners' contention that
the lost property included precious memorabilia, the court reiterated that "[t]o support a finding of
gross negligence . . . the appellants [must] have subjectively understood the existence of the risk of
losing difficult-to-replace material goods and irreplaceable memorabilia." Id. Because there was
no evidence that the warehouse owners "had any idea of the enormity of the [property owners']
potential loss," and were not told of the special contents of the warehouse, they could not be found
grossly negligent. Id.

 As in Hironymous, this record contains no proof that loss of the property would constitute
a grievous injury or that the type of property involved was irreplaceable. There is also no proof that
Wren was aware of the value or nature of the property stored in the units. For that reason, there is
no proof to establish "gross negligence" as defined by statute and binding caselaw.

 We reverse the judgment of the trial court and render a judgment that the Bastinellis take
nothing.

 Josh R. Morriss, III

 Chief Justice

CONCURRING OPINION

 Although I concur with the conclusion at which our learned Chief Justice has arrived in this
matter and applaud his scholarly drafting of the opinion, I do so reluctantly because the result here
seems to violate the "tain't fair" rule. Despite my reticence, we are obligated to follow the law, not
look to the results we believe to be fair and then attempt to justify the means we took to achieve that
end. 

 Most people (lawyers and laity alike) generally think of gross negligence as being the
common-law definition set out in Burk Royalty Co. v. Walls, 616 S.W.2d 911 (Tex. 1981): 

Gross negligence, to be the ground for exemplary damages, should be that entire
want of care which would raise the belief that the act or omission complained of was
the result of a conscious indifference to the right or welfare of the person or persons
to be affected by it.

Id. at 920.

 However, the common-sense definition above is changed by statute (Tex. Civ. Prac. & Rem.
Code Ann. 41.001(11) (Vernon 2008)):

"Gross negligence" means an act or omission:

 (A) which when viewed objectively from the standpoint of the actor at the time
of its occurrence involves an extreme degree of risk, considering the probability and
magnitude of the potential harm to others; and 

 (B) of which the actor has actual, subjective awareness of the risk involved, but
nevertheless proceeds with conscious indifference to the rights, safety, or welfare of
others.

 Glaringly absent from the statutory definition is the qualifier "to be the ground for exemplary
damages." 

 In this case, a phrase which is generally employed in the tort realm to determine whether
punitive damages can be recovered (in addition to actual damages) is injected by contract to a
circumstance under which no recovery for misfeasance is possible unless gross negligence is shown. 
Therefore, each of the elements (including "extreme risk") is incorporated into elements which are
necessary to be proven. "[A] gross negligence finding may be upheld on appeal only if there is
some evidence that a) the defendant's conduct created an extreme risk of harm, and b) the defendant
was aware of the extreme risk." Wal-Mart Stores v. Alexander, 868 S.W.2d 322, 326 (Tex. 1993). We then must look at what constitutes "extreme risk." The harm to be anticipated from the
conduct must be extraordinary harm such as "death, grievous physical injury, or financial ruin."
Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 24 (Tex. 1994); Celanese Ltd. v. Chem. Waste Mgmt.,
Inc., 75 S.W.3d 593, 600 (Tex. App.--Texarkana 2002, pet. ref'd).

 When the element of extreme risk (along with the actual, subjective awareness of that risk
by the miscreant) is required to be proven, it would seem that the only way that a claimant would be
able to recover from the operator of a self-storage unit would be to show that something as valuable
as the crown jewels were stored in the facility, that the operator of the self-storage unit was fully
aware that the immensely valuable items were stored, and yet the operator acted with conscious
indifference to the dangers involved, occasioning great loss.

 No mention was made at trial or on appeal of the fair notice doctrine regarding this
heightened standard of liability. Dresser Indus. v. Page Petroleum, 853 S.W.2d 505, 508 (Tex.
1993). However, even if the disclaimer of liability had been contained in the contract in such a
fashion as to bring immediate attention to itself and thus comply with the fair notice doctrine, it is
doubtful that any layman would comprehend that the practical effect would be to totally exculpate
the self-storage facility operator from virtually any liability whatsoever. After all, people do not
generally store property sufficiently valuable to occasion extreme risk in a self-storage facility. Most
people would believe that such a limitation would excuse only accidental tortious conduct, raising
the standard to the conscious indifference of the consequences. 

 The issues which arise concerning the elevation of the standard of liability to gross
negligence by contract appear to be rare in appellate opinions. Alert practitioners representing
various landlords or bailees may commence its wider use in drafting future contracts, effectively
substantially reducing the expected standard of care which the public generally assumes to be in
place. 

 Applying the statutory definition of gross negligence to the circumstances at hand can be
compared to supplying the courts with shoes that will not fit. Although the shoes pinch and bind,
we are forced to wear them. 

 All this is said as a premise to urge a change in the statutory definition of "gross negligence"
to the effect that the current definition applies when used as a predicate to the recovery of punitive 

damages, but to exclude the "extreme risk" factor when only actual damages are sought to be
recovered. 

 Bailey C. Moseley

 Justice

Date Submitted: December 21, 2009

Date Decided: January 20, 2010
1. In order to preserve error regarding a trial court's decision to exclude evidence, the
complaining party must comply with Rule 103 of the Texas Rules of Evidence by making an "offer
of proof" which sets forth the substance of the proffered evidence. Tex. R. Evid. 103(a)(2). 
2. The Bastinellis also objected that Johnson's testimony would violate the Dead Man's Rule. 
Rule 601(b) of the Texas Rules of Evidence states: 

 In civil actions by or against executors, administrators, or guardians, in which
judgment may be rendered for or against them as such, neither party shall be allowed
to testify against the others as to any oral statement by the testator, intestate or ward,
unless that testimony to the oral statement is corroborated or unless the witness is
called at the trial to testify thereto by the opposite party.

Tex. R. Evid. 601(b). Johnson was not a party to the litigation and did not otherwise have an interest
in the suit. The statute was inapplicable as to him. See Adams v. Barry, 560 S.W.2d 935, 937 (Tex.
1978); Tuttle v. Simpson, 735 S.W.2d 539, 542-43 (Tex. App.--Texarkana 1987, no writ). Because
we determined the trial court did not err in excluding the evidence on hearsay grounds, we need not
further address this issue. 

 
3. Although a defendant "cannot be grossly negligent without being negligent," evidence of
simple negligence is not enough to prove either the objective or subjective elements of gross
negligence. Driskill v. Ford Motor Co., 269 S.W.3d 199, 206 (Tex. App.--Texarkana 2008, no pet.)
(citing Trevino v. Lightning Laydown, Inc., 782 S.W.2d 946, 949 (Tex. App.--Austin 1990, writ
denied)); see Universal Servs. Co. v. Ung, 904 S.W.2d 638, 641 (Tex. 1995). Either element may
be proven by circumstantial evidence, however. Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921
(Tex. 1998). 
4. While we have serious doubts that the parties contemplated all of this when they agreed to
a contract that used the term "gross negligence," if they contemplated anything about it, the facts are
that they did use the term and that term is defined in this way. We are bound by the definition.
5. Johnson testified that it was not the responsibility of the police to contact storage unit
owners to notify them about the incident. 
6. See Moriel, 879 S.W.2d at 24 (reciting rule that serious harm must be "independent and
qualitatively different from the sort of injuries that typically result from bad faith or breach of
contract.")