IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00386-CR

 

Elzie Bell,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the County Court

Navarro County, Texas

Trial Court No. 60358

 



MEMORANDUM  Opinion



 








            In his sole issue, Elzie
Bell challenges the legal and factual sufficiency of the evidence supporting
his conviction for the misdemeanor offense of resisting arrest.  We will
affirm.

When reviewing a challenge to the legal
sufficiency of the evidence to establish the elements of a penal offense, we
must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  Any inconsistencies in the evidence are resolved in favor of
the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In reviewing the sufficiency of the
evidence, we should look at “events occurring before, during and after the
commission of the offense and may rely on actions of the defendant which show
an understanding and common design to do the prohibited act.”  Cordova v.
State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).  Each fact need not
point directly and independently to the guilt of the appellant, as long as the
cumulative force of all the incriminating circumstances is sufficient to
support the conviction.  See Johnson v. State, 871 S.W.2d 183, 186 (Tex.
Crim. App. 1993) (“[i]t is not necessary that every fact point directly and
independently to the defendant’s guilt; it is enough if the conclusion is
warranted by the combined and cumulative force of all the incriminating
circumstances.”); Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App.
1994); Alexander v. State, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987).

 

. . .

 

[C]ourts of appeals should adhere to the
Jackson standard and determine whether the necessary inferences are
reasonable based upon the combined and cumulative force of all the evidence
when viewed in the light most favorable to the verdict.

 

Hooper v. State, 214 S.W.3d 9, 13, 15-17 (Tex. Crim.
App. 2007).

The Court of Criminal Appeals recently
overruled Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996) and
factual-sufficiency review.  See Brooks v. State, --- S.W.3d ---, ---,
2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010).  The court held that the
Jackson v. Virginia legal-sufficiency standard is the only standard a
reviewing court should apply in determining the sufficiency of the evidence.  Id. 
We thus will not review the evidence for factual sufficiency.

Bell argues that there is no evidence
the officer was attempting an arrest or that Bell used force against the
officer.  A person is arrested when he has actually been placed under restraint
or taken into custody by an officer or person executing an arrest warrant or by
an officer or person arresting without a warrant.  Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon 2007).  Bell
points to no authority that a person must be told he is being placed under
arrest before he can commit the offense of resisting arrest.

A person commits the offense of
resisting arrest if he intentionally prevents or obstructs a person he knows is
a peace officer from effecting an arrest[, search, or transportation of the
actor] by using force against the peace officer.  Tex. Pen. Code Ann. § 38.03(a) (Vernon 2003).  We recently
wrote:

 

       The Penal Code does not provide a
definition of “using force against” or of those terms individually.  Courts
have concluded that non-cooperation with an arrest is not an act of “use of
force against” a peace officer under the resisting arrest statute, for example:

 

· shaking off an arresting officer’s
detaining grip.  Anderson v. State, 707 S.W.2d 267, 269 (Tex.
App.—Houston [1st Dist.] 1986, no pet.).

 

· pulling away from an arresting officer
after being arrested.  Young v. State, 622 S.W.2d 99, 100-01 (Tex. Crim.
App. [Panel Op.] 1981).

 

· crawling away from an arresting
officer.  Leos v. State, 880 S.W.2d 180, 181 (Tex. App.—Corpus Christi
1994, no pet).

 

       Thus, refusing to cooperate
with being arrested does not constitute resisting arrest by force. 
However, we have held that evidence of non-cooperation combined with violent
swings of the body and a forward movement causing the officer and the defendant
to fall off a porch was sufficient to establish resisting arrest.  Bryant v.
State, 923 S.W.2d 199, 206 (Tex. App.—Waco 1996, pet ref’d).

 

Campbell v. State, 128 S.W.3d 662, 671 (Tex. App.—Waco
2003, no pet.) (emphasis added).  And courts have made the distinction between
actions that endanger an officer (i.e. striking an arresting officer’s
arm) and those actions in which there is no danger of injury to the officer (i.e.
pulling arm away from officer).  See Raymond v. State, 640 S.W.2d 678,
679 (Tex. App.—El Paso 1982, pet. ref’d).

 

Sheehan v. State, 201 S.W.3d 820, 822-23 (Tex. App.—Waco
2006, no pet.).

            The evidence viewed in the light most favorable to
the verdict shows that Officer
Williams instructed Bell, who appeared to be intoxicated, to put his hands
behind his back as Bell attempted to approach a man who Bell had allegedly just
assaulted.  When Bell did not comply, Officer Williams grabbed Bell’s hand in
an attempt to handcuff him.  Bell then tried to pull his arm away and pushed
Officer Williams, who pepper-sprayed Bell and wrestled him to the ground.  Bell
ignored repeated instructions to stop resisting, and Officer Simpson and a
paramedic had to physically assist Officer Williams in subduing Bell and
applying handcuffs.  Thereafter, the officers had to forcibly put Bell in the
police car.

            Based on this evidence, a
rational juror could find, beyond a reasonable doubt, that Bell was being
arrested and used force against the officers.  The evidence is legally
sufficient, and we overrule Bell’s issue.

We affirm the trial court’s judgment.

 

 

 

REX D. DAVIS

Justice

 




Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

(Chief Justice Gray concurs in the
judgment to the extent it affirms the trial court’s judgment only.  A separate
opinion will not issue.)

Affirmed

Opinion
delivered and filed December 8, 2010

Do
not publish

[CR25]






he experts went further and opined that it
was also a watercourse.  For example, Jerry Ince testified that the Del Buonos’
property (and Vien’s) “is at the confluence of the bottom of the [240-acre]
watershed.”  Waters from that watershed typically drain into a culvert beside
Greathouse Road.  A “pond sits on that 240-acre watershed, and when the
driveway was built behind to extend it behind the spillway [sic], now it
removed that watershed from the road to that driveway.”  Thus, Ince testified
that the construction of the driveway altered the natural flow of waters across
the watershed.  But Ince did not characterize the watershed as a watercourse. 
And we hold as a matter of law that it is not.  See Tex. Woman’s
Univ., 221 S.W.3d at 279 (“Opinions from our sister courts suggest that a
watershed itself does not constitute a watercourse.”)  “Otherwise, as soon as
rain hit ‘any piece of land,’ the rain would automatically lose its
classification of diffused surface water.”  Id.;
see also Hoefs v. Short, 114 Tex. 501, 273 S.W. 785, 787 (1925) (“in
order to constitute a water course, there must be something more than mere
surface drainage over the entire face of a tract of land”).

Duty Owed

            Under the common law,
adjoining landowners have interrelated rights and duties with regard to surface
water.  The landowner whose property lies at a higher elevation cannot “burden
adjacent lands with surface water he accumulate[s] or discharge[s] except in
the same manner in which it would naturally flow; and the lower estate [i]s
obliged to receive the surface waters as they naturally flow[ ].”  Bily v.
Omni Equities, Inc., 731 S.W.2d 606, 610 (Tex. App.—Houston [14th Dist.] 1987,
writ ref’d n.r.e.) (citing Kraft v. Langford, 565 S.W.2d 223, 228 (Tex. 1978)).  As the Supreme Court stated in Kraft, “a
landowner rule [can]not burden adjacent lands with surface water he accumulate[s]
or discharge[s] except in the same manner in which it would naturally flow.”  Kraft,
565 S.W.2d at 228; see also Bunch v. Thomas, 121 Tex. 225, 49 S.W.2d 421,
423 (1932) (“a landowner cannot collect surface water into an artificial
shannel [sic] or volume, or precipitate it in greatly increased or unnatural
quantities upon his neighbor, to the substantial injury of the latter”).[5]

            Focusing in particular on
the lower landowner (here, Vien), Texas courts have characterized the obligation
to receive surface waters as they naturally flow as a legal duty.  See,
e.g., Stukes v. Bachmeyer, 249 S.W.3d 461, 466 (Tex. App.—Eastland 2007, no
pet.); Cain v. Rust Indus. Cleaning Servs., Inc., 969 S.W.2d 464, 469 (Tex. App.—Texarkana 1998, pet. denied); Jefferson County
Drainage Dist. No. 6 v. Lower Neches Valley Auth., 876 S.W.2d 940, 950
(Tex. App.—Beaumont 1994, writ denied); see also Wilson v. Hagins, 50
S.W.2d 797, 799 (Tex. Comm’n App. 1932, judgm’t adopted) (lower landowners “owe
a service” to receive surface waters); Cone v. City of Lubbock, 431
S.W.2d 639, 649 (Tex. Civ. App.—Amarillo 1968, writ ref’d n.r.e.) (same).  Thus,
Vien owed a common law duty to the Del Buonos to allow surface waters to flow
across his property without hindrance.

            The waters which inundated
the Del Buonos’ home were surface waters not flood waters.  Therefore, the
State owed no duty to regulate the flow of those waters, and Vien owed a duty
to the Del Buonos to allow those waters to flow across his property without
hindrance.  Accordingly, we overrule Vien’s first issue.

Foreseeability

            Vien contends in his second
issue that the evidence is legally and factually insufficient to support the
court’s implied finding of foreseeability.

            For a legal insufficiency
review, we must determine “whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.”  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We “must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not.”  Id.

            For a factual insufficiency review,
reversal is required only if the challenged finding is “so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.”  Byrd
v. Estate of Nelms, 154 S.W.3d 149, 156-57 (Tex. App.—Waco 2004, pet.
denied) (quoting Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)).

            Foreseeability is one of the
two sub-elements of proximate cause.  W. Invs., Inc. v. Urena, 162
S.W.3d 547, 551 (Tex. 2005).  Foreseeability “requires that a person of
ordinary intelligence should have anticipated the danger created by a negligent
act or omission.”  Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d
472, 478 (Tex. 1995); accord Barton v. Whataburger,
Inc., 276 S.W.3d 456, 463 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). 
“A danger is foreseeable if its general character might reasonably be
anticipated, if not its precise manner.”  Barton, 276 S.W.3d at 463; accord
Doe, 907 S.W.2d at 478.

            Here, the trial court made
the following findings of fact pertinent to the foreseeability issue:

12.       The Court further finds that
Defendants Freeman had actual and direct knowledge that the changes made by
Defendants Freeman had caused flooding on Plaintiff’s [sic] property prior to
the damage suffered by Plaintiffs.

 

13.       The Court finds that
Defendants Freeman informed Defendant Vien of the problems caused by Defendants
Freeman prior to Defendant Vien’s purchase of the property from Defendants
Freeman.

 

            Mary Del Buono testified
that when the Freemans purchased their lot in 2005 she informed them the
property had some “drainage issues” and gave them some pictures depicting the
flooding in 2004.  The Freemans personally observed the water on the Del Buonos’
lot in 2006 when the rainwaters covered most of their lot and came close to
their house.

            Sheree Freeman testified
that she told Vien they wanted him to take the lot back because “the place
floods.  We can’t build a house here.”  She told him that the Del Buonos had
threatened to sue because of the incident in 2006.  As part of the negotiations
for Vien to repurchase the property, he asked them to install a second culvert
under the driveway.

            This evidence is such as “would
enable reasonable and fair-minded people“ to find that it was foreseeable the
driveway on Vien’s lot would cause the Del Buonos’ home to be flooded in a
heavy rainstorm.  See Tex. Woman’s Univ., 221 S.W.3d at 284; see
also City of Keller, 168 S.W.3d at 827.  Thus the evidence is legally
sufficient to support the court’s implied finding on the issue of
foreseeability.

            The contrary evidence is
that their home had not flooded during the heavy rains in 2004 or 2006.  In
addition, Vien denied that the Freemans warned him of any flooding problems. 
Nevertheless, we conclude that the implied finding of foreseeability is not “so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.”  See Byrd, 154 S.W.3d at 156-57.  Thus, we
overrule Vien’s second issue.

Act of God

            Vien complains in his third
issue that the evidence is legally
and factually insufficient to support the court’s implied rejection of his
defensive theory that the flooding of the Del Buonos’ home was an act of God.

            “An occurrence is caused by
an act of God if it is caused directly and exclusively by the violence of
nature, without human intervention or cause, and could not have been prevented
by reasonable foresight or care.”  Dillard v. Tex. Elec. Coop., 157
S.W.3d 429, 432 n.5 (Tex. 2005) (quoting Comm.
on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—General
Negligence & Intentional Personal Torts PJC 3.5 (2003)). 
“[W]hat is meant by allusion to the absence of human intervention is not the
absence of all human involvement but the absence of human negligence proximately
causing the injury.”  McWilliams v. Masterson, 112 S.W.3d 314, 321 (Tex. App.—Amarillo 2003, pet. denied).

            The Del Buonos’ expert, Ince,
testified that in his opinion the elevated driveway was a proximate cause of
the flooding of their house.  Vien’s expert James McDill stated in his report,
“There is no denying that the installation of a 24” corrugated metal pipe
culvert, combined with the existing driveway, created an obstruction which
allowed floodwaters into the DEL BUONO HOUSE in March of 2007.”  He further
opined that, if the elevated driveway did not obstruct the ditch running along
Greathouse Road, “there is a more than reasonable chance that these floodwaters
from this particular storm would have also backed up into the DEL BUONO HOUSE.” 
During cross-examination, McDill agreed that “the driveway is the culprit here,
not the culvert.”  He also testified that the driveway and culvert “were the
conditions that created allowance of the flood waters into the Del Buono
house.”

            The experts agreed that the
elevated driveway caused the Del Buonos’ home to flood.  This evidence is such
as “would enable reasonable and fair-minded people“ to reject the defensive
theory that the flooding was caused “directly and exclusively [by] natural
causes, without human intervention.”  See Macedonia Baptist Church v. Gibson,
833 S.W.2d 557, 560 (Tex.
App.—Texarkana 1992, writ
denied) (emphasis added).

            The only contradictory
evidence Vien refers to is the unusual severity of flooding experienced by
Ellis County during this storm.  The county was declared a disaster area by the
governor, and that precinct was purportedly “the hardest hit.”[6] 
While acknowledging the unusual severity of the flooding, we cannot say that
the court’s implied rejection of the act of God theory is “so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.”  See Byrd, 154 S.W.3d at 156-57.  Thus, we
overrule Vien’s third issue.

Failure to Mitigate Damages

            Vien argues in his fourth
issue that the evidence is
legally insufficient to support the court’s implied rejection of his defensive
theory that the Del Buonos
failed to mitigate their damages.[7]

            A plaintiff must mitigate
his damages if he can do so with “trifling expense or with reasonable
exertions.”  Gunn Infiniti, Inc. v. O’Byrne, 996 S.W.2d 854, 857 (Tex. 1999) (quoting Great Am. Ins. Co. v. N. Austin Mun. Util.
Dist. No. 1, 908 S.W.2d 415, 426
(Tex. 1995)).  The
defendant bears the burden of proof on this issue and must show the extent to
which damages were increased by the failure to mitigate.  Young v. Thota,
271 S.W.3d 822, 830 (Tex. App.—Fort Worth 2008, pet. denied); see Alamo
Cmty. Coll. Dist. v. Miller, 274 S.W.3d 779, 788 (Tex. App.—San Antonio 2008, no pet.).

            The court admitted two repair
estimates tendered by the Del Buonos.  The first was prepared by Stanley
Restoration in April 2007 and estimated total cost of repair and restoration to
be $37,200.  Mary testified that this estimate was based on replacing the lower
two feet of sheetrock throughout the house in addition to flooring and other
necessary repairs.  She also testified that they could not afford to pay for
this, so they instead pulled out the carpet and other flooring.  Mark Del Buono
testified that Mr. Doyle from Stanley Restoration advised them not to remove
the water-soaked sheetrock.  Rather, they were advised to keep air circulating
through the house with fans and spray the walls with bleach to minimize the
chance of mold forming, and they followed these recommendations.  Mark likewise
testified that they could not afford to have the repairs done that were
recommended by Stanly Restoration.  Mark and Mary both testified that they were
concerned about their daughter’s asthma and did not want to open up the walls
by removing sheetrock because it might exacerbate her condition.

            Mold did form in the house,
and the second estimate took this into account, requiring the removal and
replacement of all the sheetrock and other steps to remediate the mold growth. 
The second estimate, prepared by Southland Construction Company in January
2009, estimated total costs of restoration and remediation to be $83,700.

            Vien argued at trial and
contends on appeal that the Del Buonos should have mitigated their damages by
removing the water-soaked sheetrock.[8]

            From the evidence, “reasonable
and fair-minded people“ could have found that: (1) the Del Buonos could not
afford to have the sheetrock removed as Vien contends they should have; (2)
they reasonably followed Mr. Doyle’s advice in this regard; (3) they were not
equipped to remove the sheetrock themselves; and (4) removal of the sheetrock
would have required more than mere “trifling expense” or “reasonable
exertions.”  See Gunn Infiniti, 996 S.W.2d at 857; Mondragon v.
Austin, 945 S.W.2d 191, 195 (Tex. App.—Austin 1997, no pet.).  Thus, the
evidence is legally sufficient to support the court’s implied rejection of the
defensive theory that the Del Buonos failed to mitigate their damages.

            Vien argues in his brief that
he is entitled to rendition of judgment on this issue, because the evidence (as
he views it) conclusively establishes that the Del Buonos failed to mitigate
their damages.  We have rejected this contention.  He argues in the alternative
that the case should be reversed and remanded “for a proper determination of
damages taking into account the Del Buonos’ failure to mitigate.”  This
alternative request depends on an affirmative finding that the Del Buonos
failed to mitigate their damages.  We have determined, however, that the
evidence supports the court’s implied rejection of Vien’s contention that they
failed to mitigate.  Thus, Vien is not entitled to reversal and remand for a
new damages hearing.

            Accordingly, we overrule his
fourth issue.

Proper Measure of Damages

            Vien contends in his fifth
issue that the court failed to use the proper measure of damages with regard to
the court’s award of $12,500 for the contents of the home. Although Vien
contends that the court used the wrong measure of damages, his contention
really is that the Del Buonos “did not submit evidence at trial of the loss in
market value of their furniture.”

            Vien suggests that the
proper measure of damages is the diminution in market value.  However, a
different measure applies for household furniture and other contents which have
no recognized market value.

The law of damages distinguishes between
marketable chattels possessed for purposes of sale and chattels possessed for
the comfort and well-being of their owner.  In the instance of the former it
judges their value by the market price.  In the instance of the latter it
measures their loss, not by their value in a secondhand market, but by the
value of their use to the owner who suffers from their deprivation.  The latter
measure is employed in the case of household furniture, family records, wearing
apparel, personal effects, and family portraits.

 

Allstate Ins. Co. v. Chance, 590 S.W.2d 703, 703 (Tex. 1979) (per curiam) (quoting Crisp v. Sec. Nat’l Ins. Co.,
369 S.W.2d 326, 329 (Tex.
1963)); see Gulf State
Utils. Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002); Burns v. Rochon,
190 S.W.3d 263, 270 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  More
succinctly, “[t]he measure of damages for the destruction of such items is the ‘actual
worth or value of the articles to the owner for use in the condition in which
they were at the time of [the injury] excluding any fanciful or sentimental
considerations.’”  Gulf State Utils., 79 S.W.3d at 566 (quoting Crisp,
369 S.W.2d at 328).

            “It is well settled that a
property owner may opine about the property’s value.”  Id.; Burns, 190 S.W.3d at 270-71.  “[T]he trier of fact
may consider, in determining the actual value to the owner at time of loss, the
original cost, cost of replacement, opinions of qualified witnesses, including
the owner, the use to which the property was put, as well as any other
reasonably relevant facts.”  Gulf State Utils., 79 S.W.3d at 566
(quoting Allstate Ins. Co.,
590 S.W.2d at 704).  “[T]he jury has discretion to award damages within the
range of evidence presented at trial.”  Id.
(citing Price Pfister, Inc. v. Moore & Kimmey, Inc., 48 S.W.3d 341,
352 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

            The Del Buonos testified and
presented documentary evidence that the value of the household contents that
were permanently damaged by the floodwaters was approximately $26,000.[9] 
Vien is correct that they referred to these valuations inconsistently as either
market value or replacement cost.  Vien cross-examined them about the basis for
their valuations, but he presented no evidence suggesting a different value.

            The court’s award of $12,500
in damages for household contents was “within the range of evidence presented
at trial.”  Id.    ; see Burns, 190 S.W.3d at
270-71; Hironymous v. Allison, 893 S.W.2d 578, 582-83 (Tex. App.—Corpus Christi 1994, writ denied).  Accordingly, we
overrule Vien’s fifth issue.

Contribution

            Vien claims in his sixth
issue that the court erred by concluding that he is not entitled to “contribution
and/or indemnity from the Freemans.”[10]

            The judgment decrees that
Vien and the Freemans are jointly and severally liable for the Del Buonos’
damages.[11] 
The judgment denied Vien’s cross-claim against the Freemans for contribution. 
In Finding of Fact No. 1, the court similarly found them jointly and severally
liable and that Vien is not entitled to contribution.  In Finding of Fact No.
16, the court found that Vien is not entitled to contribution because he “was
aware of the flooding problem caused by the road constructed by Defendant
Freeman prior to the purchase from Defendants Freeman.”

               Vien cites section 33.016
of the Civil Practice and Remedies Code as the basis for relief.  Section
33.016 applies to claims against a “contribution defendant,” which is a defendant
“from whom the claimant seeks no relief at the time of submission.”  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 33.016 (Vernon 2008).  Here, however, the Del Buonos sought relief against
both the Freemans and Vien, and the court found them both liable.  Thus,
section 33.016 does not apply.

            Instead, section 33.015
governs contribution as between defendants who are parties to the judgment.  Id. § 33.015 (Vernon 2008).  A defendant’s right of
contribution is based on the respective percentage of responsibility assigned
to each party.  Id.  However, Vien did not seek a finding
on the respective percentages of responsibility for each party.   Vien’s
failure to seek such a finding results in a waiver of any error in the denial
of his cross-claim for contribution.  See Estate of Clifton v. S. Pac. Transp.
Co., 709 S.W.2d 636, 638-39
(Tex. 1986) (defendant not
entitled to remand where it failed to request additional deliberation for
finding on co-defendant’s percentage of responsibility); Kansas City S. Ry.
v. Mo. Pac. R.R., No. 09-06-00255-CV, 2008 Tex. App. LEXIS 5330, at *11-13
(Tex. App.—Beaumont July 17, 2008, pet. denied) (mem. op.) (defendant failed to
preserve its factual sufficiency complaints by failing to request additional
findings of fact).  Accordingly, we overrule Vien’s sixth issue.

Having overruled the issues presented,
we affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed

Opinion
delivered and filed December 15, 2010

[CV06]









[1]
              Vien is a real
estate agent.

 





[2]
              Although the court
found the Freemans jointly and severally liable, they did not perfect an
appeal.

 





[3]
              The parties dispute
whether Phillip improved an existing driveway or constructed a new one.  In
Finding of Fact No. 16, the court found that he “constructed” the driveway.  In
the final analysis, this issue is irrelevant.





[4]
              The elements of a
negligence claim are a duty, a breach of that duty, and damages proximately caused
by the breach.  W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).





[5]
              Section 11.086 of
the Water Code imposes a similar statutory duty on landowners.  See Tex. Water Code Ann. § 11.086(a)
(Vernon 2008); Kraft v. Langford, 565 S.W.2d 223, 229 (Tex. 1978); Boatman
v. Lites, 970 S.W.2d 41, 44 (Tex. App.—Tyler 1998, no pet.); Bily v.
Omni Equities, Inc., 731 S.W.2d 606, 610 (Tex. App.—Houston [14th Dist.] 1987,
writ ref’d n.r.e.).  However, the Del Buonos did not plead a statutory cause of
action.





[6]
              According to a
newspaper report offered in evidence, the roads in that precinct were “the most
affected” by the heavy rains.

 





[7]
              Vien specifically contends that the evidence conclusively
establishes that the Del Buonos failed to mitigate their damages.  This is a
legal-insufficiency claim.  See
Hunter v. Ford Motor Co., 305
S.W.3d 202, 205 (Tex.
App.—Waco 2009, no pet.).





[8]
              Vien also suggests
that the Del Buonos’ failure to inform him of their intentions regarding the
repair of their home and their failure to purchase flood insurance are relevant
to this issue.  However, he does not direct us to any legal authorities to
support this contention, and our research has disclosed none.





[9]
              Plaintiffs’ Exhibit
No. 8 is an itemized list of the household contents divided by room with
subtotals included for the damaged items in each room (and a barn on the
property).  According to our calculations, the total loss indicated (including
the contents of the barn) is $25,917.54.  Mary testified that the total loss
was $25,931.65.

 





[10]
            The terms contribution
and indemnity are often used interchangeably, but they do not mean the same
thing.  See George C. Hanks, Jr., Contribution and Indemnity after HB
4, 67 Tex. B.J. 288, 289
(2004).  Contribution refers to the payment by each tortfeasor of his
proportionate share of the plaintiff’s damages.  See Gus M. Hodges, Contribution and Indemnity Among
Tortfeasors, 26 Tex. L. Rev.
150, 150 (1947).  Conversely, indemnity refers to the “shifting [of] the entire
burden of loss from one tortfeasor to another.”  B & B Auto Supply, Sand
Pit & Trucking Co. v. Cent. Freight Lines, Inc., 603 S.W.2d 814, 816
(Tex. 1980).  Because of Texas’s proportionate responsibility statutes, “the
common law right of indemnity is no longer available between joint tortfeasors
in negligence cases.”  Id. at 817.

 





[11]
            Other than an
intentional tortfeasor whose conduct violates one of fourteen penal statutes
listed in section 33.013(b)(2), a defendant may be found jointly and severally
liable only if his percentage of responsibility is found to be greater than
fifty percent.  See Tex. Civ.
Prac. & Rem. Code Ann. § 33.013(b) (Vernon 2008).  Under this
general principle of joint and several liability, it is mathematically possible
for only one defendant to be jointly and severally liable.  See Bay
Rock Operating Co. v. St. Paul Surplus Lines Ins. Co., 298 S.W.3d 216, 233 (Tex. App.—San Antonio 2009, pet. denied).  Thus, it was improper
for the court to find both Vien and the Freemans jointly and severally liable. 
However, the Freemans have not perfected their own appeal.