**W. L. CONE, Appellant,**

v.

**CITY OF LUBBOCK et al., Appellees.**

**No. 7793.**

Court of Civil Appeals of Texas.

Amarillo.

June 24, 1968.

Rehearing Denied Sept. 3, 1968.

Andress, Woodgate & Hartt, Dallas, Wm. Andress, Jr., Dallas, of counsel, for appellant.

Fred O. Senter, Jr., and George A. Staples, Jr., and A. W. Salyars, Lubbock, for appellees.

CHAPMAN, Justice.

This is an appeal from a judgment rendered for the City of Lubbock notwithstanding the verdict. Appellant, W. L. Cone, had since 1927 owned the land out which use the alleged cause of action filed by the City of Lubbock developed. It is part of a low basin area receiving run-

off waters, and was such even before annexed to the City of Lubbock in 1949. In 1951, the City enacted Chapter 16 of its original Lake Area Ordinance prohibiting the change of terrain in such area without approval of a cut-and-fill plan providing for adequate storm water storage after completion of any rearrangement of soil.

Mr. Cone sold 18,000 cubic yards of the soil from his basin before the controversy arose with the City, 5,850 cubic yards of which the City purchased and used in raising the level of and paving streets in the immediate vicinity. This substantially increased the water-holding capacity of his 10-acre tract and where it raised the level of the streets to which appellant's land was charged with a servitude to receive therefrom surface waters it obviously changed the natural flow of waters such as had theretofore existed.

In 1963, appellant initiated a program of removing soil from the rear of his tract and filling the street frontage to street level for the purpose of realizing an economic return on his property. The City secured a temporary injunction on May 6, 1963, upon allegations of Mr. Cone's failure to comply with the Lake Area Ordinance by securing a cut-and-fill plan and on assertions that he was interfering with the natural flow of waters and thereby endangering neighboring streets. In October, 1964, after a trial to the court on the merits and approximately 16 months after the temporary injunction was granted the court dissolved such injunction and denied the City any recovery. No appeal was perfected from that judgment.

As soon as appellant could secure financing after the injunction was dissolved he continued the same operation to rearrange his tract which he had been performing before the 1963 injunction was granted. The City officials watched his operation for three months without interference, then ten days before completion of his project it went to another district court in Lubbock and secured another temporary injunction.

In an appeal to this Court, Cone v. City of Lubbock, 395 S.W.2d 651 (1965 Tex.Civ. App., n. r. e.), it was held that the issues before the court should be determined at a trial on the merits. In such subsequent trial the jury found that if appellant's earth moving activities since October, 1964, had been allowed to continue they would not have caused the streets involved to be flooded during and after heavy rains. There is evidence to support such findings and the City has not contested it on this appeal. The jury also found that $4,600.00 would compensate Mr. Cone for actual expenses incurred by reason of delay in completion of the work and that $1,000.00 a month would reasonably compensate him for loss of use of the property for the 24 months he would have had its use had he not been prevented from completing his fill operations by reason of the injunctions granted against him.

Following the City's motion for judgment n. o. v. the trial court rendered a judgment to the effect that the City was not liable in damages because it was acting in a governmental capacity, but enjoined any attempt to enforce Chapter 16 of the ordinances of the City against appellant; from attempting to enforce any other ordinances against him in a manner different from the manner in which it is enforced against other citizens of the City of Lubbock; from harassing and intimidating him and from interfering with his use of his property and his fill operations thereon, other than the receipt of waters through inlets to his lake area.

No cross point is raised by the City on the court's injunctive relief awarded Mr. Cone against it in attempting to enforce Chapter 16 of the Ordinances of the City against him. Cross action was filed by appellant against the City for damages for the period the injunctions required the land to remain unchanged and thereby subjected to public use without first making compensation, which he alleged is prohibited by Art. I, Sec. 17 of the Constitution of Texas, Vernon's Ann.St. Appellant also

alleged discriminatory use of his property different to others within the City and denied the waters reaching his lands were the natural flow because of changes in grades, but are a concentrated flow caused by the City to which his lands are not subservient.

The pleadings of the City upon which the case was tried alleged the embankment Mr. Cone was building, which it was seeking to enjoin, had and would alter, contrary to the laws of the State, the natural condition of the established drainage water course and would cause the water therein to be concentrated in increased volume, on and over *plaintiff's streets*[1] and will cause " * * * *a large portion of said streets* to be eroded and washed away and a large portion of *said streets* will be overflowed and so soaked as to make them unpassable and unusable *for public streets by the citizens of this City.*" It further alleged that it " * * * owes a duty and responsibility to *its citizens* * * * to see that conditions which will cause harm *to the property owners and the public in any area of the City* are not allowed to develop."

In Paragraph II of its trial pleadings the City alleged Mr. Cone owned a parcel of land within the corporate limits of the City of Lubbock described as Tract 36, Suburban Homes Addition to the City. In Paragraph III it alleged such lands " * * border on and lie adjacent to two public. streets to-wit: Ave. A and 46th Street both of which are under the control and supervision of the plaintiff herein."

The testimony shows Ave. A just described is a state highway running through the City but in Paragraph III of its pleadings the City alleges Ave. A and 46th Street are both under its control and supervision. Appellant in its pleadings admits the truthfulness of the City's Paragraphs II and III but neither in those paragraphs nor in any other pleadings are there any allegations that it was acting as

the agent or arm of the State in discharge of the State's obligation to provide for the health, safety or general welfare of the public generally, or that it voluntarily assumed responsibilities in connection with Ave. A for the benefit of the public generally rather than for the benefit of its own citizens.

A simple and easy disposition could be made of this case in our court by holding the City in securing the injunctions which led to the damages the jury awarded Mr. Cone was acting in a governmental capacity, or was litigating a governmental activity,[2] and was thus immune from liability. We believe the case presents problems far more complicated and difficult than such an easy solution.

■ Ellis v. University Place, supra, holds that even though a zoning ordinance, as applied to petitioner's property, was determined to be unreasonable and unenforceable still the City had the right to litigate the question and while so doing it was acting in a governmental capacity. Zoning ordinances fall within the police power of municipalities, so the City there was litigating a governmental activity. To say that a City would be immune in litigating proprietary activity, even though it had no cause of action, would, in our opinion, be contrary to the Texas Supreme Court's declared policy of refusing to extend the doctrine of municipal immunity. City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010, 26 A.L.R.2d 935 (1951); City of Austin v. Schmedes, 156 Tex. 416, 279 S.W.2d 326, 52 A.L.R.2d 680 (1955). It has also been held that: "Those functions of a municipal corporation in its capacity as an agent of the state are strictly limited by the statutory provisions granting them. In the exercise of these functions the municipality is an arm of the sovereignty, and its powers are strictly construed." City of Uvalde v. Uvalde Electric & Ice Co., 250 S.W. 140 (Tex.Comm.App., Sec. B, 1923).

---

1. All emphases herein are ours.

2. Ellis v. City of West University Place, 141 Tex. 608, 175 S.W.2d 396 (1943).

See also City of Fort Worth v. George, 108 S.W.2d 929 (Tex.Civ.App.-Fort Worth, 1937, writ ref'd) and Shilling, supra.

Our courts long ago established rules for determining whether a municipal activity is governmental or proprietary. As so truthfully stated in Shilling, supra: "It is in the application of this rule [these rules] to a particular fact situation that the difficulty arises."

Mr. Justice Calvert in a concurring opinion in City of Corsicana v. Wren, 159 Tex. 202, 317 S.W.2d 516, 522 (1958) stated the governmental and proprietary rules as follows:

"It is well settled that activities which are carried on by a municipality, pursuant to state requirement, in discharge of the state's obligation to provide for the health, safety or general welfare of the public generally, or which are voluntarily assumed for the benefit of the public generally rather than for the benefit of its own citizens, are performed in a governmental capacity and as a governmental function. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; City of Fort Worth v. George, Tex.Civ. App., 108 S.W.2d 929, writ refused; Gartman v. City of McAllen, 130 Tex. 237, 107 S.W.2d 879; 30–B Tex.Jur. 15, Municipal Corporations, § 639. On the other hand, it is equally well settled that all other municipal activities are carried on in a private corporate capacity and are proprietary functions. Dilley v. City of Houston, 148 Tex. 191, 222 S.W.2d 992; City of Houston v. Quinones, supra; City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010, 26 A.L.R.2d 935."

■ Could it be said that the City's allegations to the effect that Mr. Cone's diversion of surface waters, "contrary to the laws of the state," bring it within litigation carried on by a municipality, pursuant to state requirement, in discharge of the state's obligation to provide for the health, safety and general welfare of the public constitutes litigation of governmental activity? We do not believe it does.

Art. 7589a, Vernon's Ann.Texas Civil Statutes, 1925, makes it unlawful for a person to divert the natural flow of the surface waters in this State but there is not anything in the statute which suggests the obligation falls upon the municipalities as the arm of the State to protect the State highways running through their corporate limits. In Hale v. City of Dallas, 335 S.W.2d 785 (Tex.Civ.App.-Dallas, 1960, writ ref'd n.r.e.) the Dallas Intermediate Appellate Court quoted with approval from other authorities to the effect that the State has full control and authority over the highways of the State, including streets of cities, and that through its legislature it has absolute control over same, which control it may or may not delegate to local authorities.

Our Supreme Court in Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915–918 (Tex.1925) said:

"The establishment of public highways being primarily a function of government belonging to the state, the right to establish them resides primarily in the Legislature, and, in the absence of constitutional restrictions, the Legislature may exercise that right direct or delegate it to a political subdivision of the state, or to such other agency or instrumentality, general or local in its scope, as it may determine. The exercise of this right by a political subdivision of the state, or by local officers, is founded upon statutory authority therefor. The Legislature may exercise possession of public roads and control over them, by and through such agencies as it may designate. * * *"

■ There is not anything in this record to show a designation by the State of the City of Lubbock to protect its highway known in the City as Avenue A. In any event, whether a particular ac-

tivity of a municipality is performed as a governmental or proprietary function is a judicial and not a legislative question. Rhodes v. City of Asheville, 230 N.C. 759, 53 S.E.2d 313; Brasier v. Cribbett, 166 Neb. 145, 88 N.W.2d 235.

It has been judicially determined that a municipality, while acting in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the State, is not protected by immunity. Scroggins v. City of Harlingen, 131 Tex. 237, 112 S.W.2d 1035 (1938); City of Waco v. Branch, 117 Tex. 394, 5 S.W.2d 498 (1928, opinion adopted); City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57 (1931, opinion adopted); City of Galveston v. Posnainsky, 62 Tex. 118 (1884).

The cleaning, maintenance, and grading of streets by a municipality are proprietary activities and in the exercise thereof the cities do not enjoy immunity. City of Panhandle v. Byrd, 130 Tex. 96, 106 S.W.2d 660 (1937, opinion adopted); City of Galveston v. Posnainsky, supra; City of Wichita Falls v. Mauldin, 39 S.W.2d 859 (Tex.Comm.App., Sec. B, 1931); Ostrom v. City of San Antonio, 62 S.W. 909 (Tex.1901); City of Wichita Falls v. Sullivan, 39 S.W.2d 882 (Tex.Comm. App., Sec. B, 1931). The operation and maintenance by a City of storm sewers, an activity related to the control of surface waters, is a proprietary activity. City of Amarillo v. Ware, supra; Dilley v. City of Houston, 148 Tex. 191, 222 S.W.2d 992, (1949).

Though the jury found against City of Lubbock in its contention that Mr. Cone's enjoined activity would flood Ave. A and 46th Street it contends it was acting in a governmental capacity in litigating the question. It was litigating matters affecting control of surface waters on the streets and maintenance of its streets. Under the record pleadings and the authorities cited it was operating in a proprietary capacity in an alleged effort, as it pleaded, " * * * to see that conditions which will cause harm to the property owners and the public in any area of the City are not allowed to develop." Therefore, it was litigating a proprietary activity from which, in our opinion, it did not enjoy immunity. To hold otherwise would be to permit a damaging of private property through litigation wholly unrelated to a governmental activity and in violation of Art. I, Sec. 17 of the Constitution of Texas, Vernon's Annotated Statutes which provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made * * *."

We are not unmindful of a trial amendment permitted by the court wherein the City alleged the use by Mr. Cone of his property constituted a public nuisance but apparently the question was not litigated. We do not believe the mere filing of pleadings would constitute litigating the question. No issues were submitted thereon and no probative evidence offered to show a public nuisance. The briefs are silent on the subject. "The state, in the exercise of its police power, may declare certain uses of property to be nuisances, but this power may only be exercised in respect of those acts or things that are nuisances in fact"[3], a situation not existing here.

By its "Point II" appellant contends the city's rights to enforce its Lake Area Ordinance in the present suit is res judicata by the unappealed judgment against the city in the former suit. This question itself is a delicate one. In 395 S.W.2d 651, the majority opinion held in effect that new facts were raised in the second case by pleading that Mr. Cone was violating Art. 7589a. From what we

3. 41 T.J.2d, Nuisances, Page 584, Sec. 11 and cases there cited.

have said above it follows that we do not consider that addition to the pleadings would add anything to the city's contention that it was litigating a governmental activity. The Supreme Court of Texas stamped an N.R.E. on 395 S.W.2d 651 in the face of a dissent which had as its thesis that res judicata was applicable in the second suit, but we realize that disposition could have been made on the basis of the statement in ʻthe majority opinion to the effect that: "All such matters * * * should be determined on final hearing." If we are correct in the conclusions reached in our first point, discussion and findings of res judicata would add nothing to appellant's claim for damages, so we do not choose to discuss it.

By its "Cross Point IV" appellee asserts the trial court erred in submitting Special Issues II, III and IV because no issue of malice was requested or submitted and such is an essential element of liability. Special Issue No. IV was a third party issue involving Simmons' actions against Cone, so that portion of the point has no place in the malice discussion.

Appellee contends that in the absence of the elements of an action for malicious prosecution no action will lie by defendant for damages resulting from an injunction suit, independently of a bond or other undertaking. When the various Texas Statutes presently existing and Art. 768, 1911 codification[4] (not included in the 1925 revision) are considered in connection with the case law this is also a complicated question.

Athens Telephone Co. v. City of Athens, 163 S.W. 371 (Tex.Civ.App.-Dallas, 1914,

writ ref'd) was announced while Art. 768 just quoted in the footnote was in effect. Since such article exempted cities from bond in any action, suit or proceeding the Dallas Intermediate Court held the statute was broad enough to include an injunction bond, so the city was liable for wrongful injunction " * * * in the same manner that it would have been had the bond actually been executed."

Art. 2072, Revised Statutes, 1925, superseded Art. 768 and provides only that "security for *costs* shall not be required of the State or any incorporated city or town in any action, suit or proceeding, * * * " leaving out the exemption from bond in injunctions.

Under title 76 Injunctions, V.T.C.S., Art. 4649 provides, inter alia, " * * * before the issuance of the writ of injunction, the complainant shall execute and file with the clerk a bond to the adverse party * * * conditioned * * * that he will pay all sums of money and costs that may be adjudged against him if the injunction be dissolved in whole or in part." No exemption is provided for a city in Art. 4649.

The first paragraph of Rule 684, Vernon's Ann. Texas Rules of Civil Procedure provides:

"In the order granting *any* temporary restraining order or temporary injunction, the court shall fix the amount of security to be given by the applicant. Before the issuance of the temporary restraining order or temporary injunction the applicant shall execute and file with the clerk a bond to the adverse party, with two or more good

4. Art. 768, Revised Statutes, 1911 provides:
"It shall not be necessary in any action, suit or proceeding in which a city accepting the provisions of this title shall be a party, for any bond, undertaking or security to be executed in behalf of the City; but all such actions, suits and proceedings shall be conducted in the same manner as if such bond, undertaking or security had been given, and for all the purposes of such actions, suits and proceedings the City shall be liable in the same manner, and to the same extent, as if the bond, undertaking or security in ordinary cases had been duly given and executed."

and sufficient sureties, to be approved by the clerk, in the sum fixed by the judge, conditioned that the applicant will abide the decision which may be made in the cause, and that he will pay all sums of money and costs that may be adjudged against him if the restraining order or temporary injunction shall be dissolved in whole or in part. If the injunction be applied for to restrain the execution of a money judgment or the collection of a debt, the bond shall be fixed in the amount of such judgment or debt, plus a reasonable amount to cover interest and costs."

The use of the word "any" in the first sentence of Rule 684 would appear to make it mandatory for all persons and entities to make bond before securing a temporary restraining order or a temporary injunction absent a statute, rule, charter provision or ordinance exempting the person or entity.

■ Our Court in Johnson v. McMahan, 40 S.W.2d 920 (1931, writ ref'd) has held " * * * where a party has been enjoined and has suffered damages by reason of the wrongful issuance of an injunction, he may recover against the sureties on the injunction bond the amount of his actual damages not exceeding the sum named in it, and may in the same action recover against the principal on the bond all actual damages proximately resulting from its wrongful issuance, whether the injunction was sued out maliciously or without probable cause." In that case there was a bond. The case is helpful in that it announces a general rule to the effect that actual damages are recoverable in Texas by a defendant against one wrongfully securing an injunction, even though not sued out maliciously if the plaintiff made bond. Under the authorities of Athens Telephone Co. v. City of Athens, supra, such damages are also recoverable if the city was exempt from bond.

■ In appellant's "First Motion for Rehearing" he states " * * * the charter of the City of Lubbock, Article VII, Section 6, provides: 'it shall not be necessary in any action, suit or proceeding, in which the City shall be a part, for any bond, undertaking or security to be executed in behalf of the City." Appellee has nowhere in its briefs denied that its city charter so provides.

Rule 419, V.A.T.R. provides: "Any statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by opposing party." If the true facts are that the city by its Home Rule Charter is exempt from bond, we perceive no reason why the quoted rule should not apply to a motion for rehearing the same as an original brief. In any event, considering the case law in Texas concerning judicial knowledge, we believe it must be said that we should take judicial knowledge of the Home Rule Charter of the City of Lubbock.

Appellee's trial pleading stated it was a Home Rule Municipal Corporation, duly incorporated, organized and existing under and by virtue of the Constitution and laws of the State of Texas. Art. 1173, V.T.C.S. under Home Rule, title 28, chapter 13 provides the proper officer, upon the adoption of a Home Rule Charter or amendment, shall certify to the Secretary of State an authenticated copy under the seal of the city, showing the approval of the qualified voters of any such charter or amendment. Art. 1174 thereunder provides, inter alia, that the city secretary of any such city or officer exercising like or similar powers, upon adoption or approval of any such charter or any amendment thereof shall record upon the records of the city in a separate book to be kept in his office for such purpose, any such charter or amendment. The article then provides that after such recordation it shall be deemed a pub-

lic act and all courts shall take judicial notice of same and no proof shall be required.

The following cases hold that courts may or must take judicial knowledge of the provisions of city charters: Pate v. Whitley, 196 S.W. 581 (Tex.Civ.App.-El Paso, 1917, n.w.h.); Dillon v. Whitley, 210 S.W. 329 (Tex.Civ.App.-Fort Worth, 1919, n.w.h.); Hallman v. City of Pampa, 147 S.W.2d 543 (Tex.Civ.App.-Amarillo, 1941, writ ref'd); City of Dallas v. Megginson, 222 S.W.2d 349 (Tex.Civ.App.-Dallas, 1949, n.r.e.); Stone v. City of Dallas, 244 S.W.2d 937 (Tex.Civ.App.-Waco, 1951, writ dism'd); Hayden v. City of Houston, 305 S.W.2d 798 (Tex.Civ.App.-Fort Worth, 1957, writ ref'd, n.r.e.); McKee v. City of Mt. Pleasant, 328 S.W. 2d 224 (Tex.Civ.App.-Texarkana, 1959, n.w.h.). However, Pate v. Whitley, supra; Dillon v. Whitley, supra; and Hayden v. City of Houston, supra, hold Courts of Civil Appeals are not required to take judicial notice of charter provisions in the absence of a showing that such provisions were recorded in the manner required in the two articles just above mentioned. It has been textually stated: "The law presumes, until the contrary is shown, that every public officer will discharge the duties imposed on him, in other words, that he will comply with the law. It will be presumed also, in the absence of a showing to the contrary, that an officer has as to past conduct done his duty, and that he has acted in accordance with the law and within, and not in excess of, his power and authority. But the presumption that an officer discharges his duty is one of fact; it prevails in the absence of and not against proof, and may be overcome by evidence to the contrary." 47 T.J.2d Sec. 118, P. 153–156. See also 20 American Jurisprudence, Sec. 170, P. 174 Evidence and 141 A.L.R., pp. 1037–1038, Annotation "Pre-

sumption that public officers have properly performed their duty, as evidence."

Accordingly, we hold that under this record we must take judicial knowledge that the City of Lubbock was exempt from filing a bond and is therefore liable for such legal damages properly proven, within the limitation period, for the improper issuance of the temporary injunctions. However, appellee pleaded lack of 30-day notice as to the claims for any property damage growing out of the issuance of the first injunction. Chapter 1, Art. II, Sec. 8 of its charter provides such notice must be given before it shall be liable for personal injury or property damage. Absent some exception to such requirement,[5] the courts hold giving such notice is a condition precedent to suit for damages. Phillips v. City of Abilene, 195 S.W.2d 147 (Tex.Civ.App., Eastland, 1946, writ ref'd); City of Dallas v. Shows, 212 S.W. 633 (Tex.Comm.App., Sec. A); City of Waco v. Landingham, 138 Tex. 156, 157 S.W.2d 631 (1941). Though appellant alleged a wrongful use of his property by the City of Lubbock as prohibited by Art. I, Sec. 17 of the Constitution of Texas no damages were sought therefor under such pleadings. Damages were sought only for wrongful restraining orders and injunctions. Appellant recognizes this in his brief wherein he states: "The case involves * * * the liability of the City of Lubbock for wrongfully interfering with such use of his property by wrongful injunction." Appellee concedes by brief such notice was not necessary as to the 1965 action, since appellant brought a cross action for damages attributable to the same action. We, therefore, hold as to the damages attributable to the 1963 law suit that appellant may not recover damages because of his failure to comply with the notice requirement. We are of the firm opinion that

5. City of Waco v. Roberts, 121 Tex. 217, 48 S.W.2d 577 (1932); Allen v. City of Navasota, 53 S.W.2d 457 (Com.App., Sec. B. 1932).

the case must be reversed and remanded on the other damage findings against the City of Lubbock for the reason that the testimony in the record concerning those damages did not meet the legal requirements.

■ Except for Mr. Cone's testimony, the only other testimony in the record as to damages upon the $1,000.00 a month jury answer is that Mr. Guillot when asked what the reasonable rental value of the built-up portion of Mr. Cone's property would be answered: "Well, I wouldn't— I couldn't say but I * * * well, I don't know but I'd say that property ought to rent for around $1,000.00 * * * every month." What property ought to rent for taken in connection with Mr. Guillot's other testimony just quoted is not, in our opinion, any evidence upon which a jury could legally base a finding of a certain amount of damages resulting from the temporary injunction on a completely new project as distinguished from a going concern.

Mr. Cone when asked the reasonable rental value of his property, testified as follows: "It would have been—what I had—it didn't include all the property but what I had in process would have brought me in a little over $1,000.00 a month."

There is not any evidence the property had ever been rented previously. There is no evidence whatever of the type rentals appellant was referring to, for what periods rentals could be earned nor the expenses incident to rental services. The evidence is a mere conclusion, and in our opinion is no probative evidence upon which to base a judgment for a net of $1,000.00 a month rentals. "The general rule in this State is that anticipated profits which might have been from an unestablished business are not susceptible of being established by proof of that degree of certainty which the law demands." Barbier v. Barry, 345 S.W.2d 557 (Tex.Civ.App.-

Dallas, 1961, n.w.h.). See also Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097 (1938); Atomic Fuel Extraction Corp. v. Slick, 386 S.W.2d 180 (Tex.Civ.App.-San Antonio, 1964); per curiam 403 S.W.2d 784 (Tex.1965).

In Atomic Fuel Extraction Corp. v. Slick just cited, the San Antonio Intermediate Appellate Court makes a distinction in proof of damages in an established business and such proof in an unestablished business. The Court stated:

"* * * In those Texas cases which have permitted recovery, there was some data and history of profits from an established business.

*    *    *    *    *    *

"In sharp contrast with those precedents are those which have consistently denied future profits when the business was new and unestablished.

*    *    *    *    *    *

"An established business should be one that is in actual operation long enough to give it permanency and recognition. It should be one that has earned a profit which can be reasonably ascertained and approximated."

In his last point appellant asserts that since the failure of Simmons to prove the waters which eroded his land while flowing from his land to Cone's were the natural flow of the waters, Cone was not obligated to receive them.

There is testimony to the effect that before the land west of Mr. Cone's lake was disturbed the water came in from the higher elevations west across Mr. Simmons' land all along the common boundary between him and Mr. Cone rather than in the concerted flow which washed Mr. Simmons' land and for which he recovered.

"Q. All across coming into your lake?

A. All across. The water never come across my corner until after Mr.

Simmons blocked his west side so it couldn't come across there. That wasn't a drainage point and never was and I think Mr. Guillot can back me up on that."

Special Issue No. IV by which the jury allowed recovery for Simmons against Cone inquired of the jury the costs of refilling and repairing the washout area in the southeast corner of the Simmons' land to prevent further erosion. If Mr. Simmons blocked his west side so as to change the natural flow of the water, Mr. Cone was not legally obligated to receive it. Lower land is subject to no servitude to receive water, the natural flow of which has been diverted thereto. Higgins v. Spear, 118 Tex. 310, 15 S.W.2d 1010 (1929); Bunch v. Thomas, 121 Tex. 225, 49 S.W.2d 421 (Tex.1932). Lands lower than the coterminous estate owe a service to receive the burden of surface waters flowing from the higher estate onto the lower so long as the surface water from the dominant estate reaches the borders of the servient one untouched by the hands of man. Wilson v. Hagins, 50 S.W.2d 797 (Tex.Comm.App.1932) citing and quoting from Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404 85 A.L.R. 451 (1932). Unless such waters had reached Mr. Cone's borders under such conditions, under the authorities cited he was not obligated to receive them and therefore could not be held in damages for repelling them or changing their flow.

In view of the testimony above quoted, we believe in order to recover Mr. Simmons would have to have submitted and received a favorable finding of fact that the waters damaging him by any action of Mr. Cone had reached the Cone property as the natural flow "untouched by the hands of man." Wilson v. Hagins,

supra; Higgins v. Spear, supra; Bunch v. Thomas, supra.

The question now presents itself as to whether this Court should reverse and remand or reverse and render. In LeMaster v. Fort Worth Transit Company, 138 Tex. 512, 160 S.W.2d 224 (Tex.1942) our Supreme Court has held that: " * * * where on appeal the appellate court determines that judgment non obstante veredicto was erroneously entered, such court will reverse the judgment of the trial court and enter judgment in harmony with the verdict, unless the appellee is unable to present such error against himself as would have prevented an affirmance of the judgment had one been entered by the trial court in harmony with the verdict." See also Jackson v. Ewton, 411 S.W.2d 715 (Tex. 1967) wherein the Supreme Court holds in accordance with the above quote and cites the LeMaster case. Believing that appellant's testimony on damages insufficient upon which to base a legal verdict we hold appellee's cross point to that effect shows sufficient grounds to vitiate the jury's verdict had a judgment been entered by the trial court.

Appellee properly raised the question of insufficient evidence upon damages to sustain the verdict rendered by the jury. We do not believe it could be said as a matter of law that appellant is incapable of producing testimony of prospective rentals he would have been able to earn had it not been for the restraining orders and temporary injunctions. We just do not believe he did so upon the trial of his cross action before the jury.

Accordingly, the judgment is reversed and rendered as to the damages assessed from the 1963 law suit. The judgment is reversed and remanded for a new trial on the other findings of damages.