WITHDRAWN
12/15/2010



**IN THE**
**TENTH COURT OF APPEALS**

_____

**No. 10-09-00318-CV**

**LADD VIEN,**

**Appellant**

 **v.**

**MARK AND MARY DEL BUONO,**

**Appellees**

_____

**From the 40th District Court**
**Ellis County, Texas**
**Trial Court No. 74,750**

**MEMORANDUM OPINION**

Mark and Mary Del Buono filed suit against Ladd Vien and others alleging that their home was flooded because of the defendants' negligence in constructing and maintaining a driveway on Vien's property which prevented rainwater from draining off the Del Buonos' property. Following a bench trial, the court found in favor of the Del Buonos. Vien contends in six issues that: (1) he owed no legal duty to the Del Buonos; (2) the evidence is legally and factually insufficient to prove foreseeability; (3) the evidence is legally and factually insufficient to support the court's implied rejection

of the defensive theory that the flood was an act of God; (4) the evidence is legally insufficient to support the court's implied rejection of the defensive theory that Del Buonos failed to mitigate their damages; (5) the court applied the wrong measure of damages; and (6) the court erred by denying his cross-claim for contribution. We will affirm.

## Background

The parties own adjoining lots in a rural area of Ellis County on Greathouse Road. The Del Buonos purchased their property from a home builder in 2001. Vien purchased the lot next door from the builder that same year because the builder "was needing some money fast."[1] Phillip and Sheree Freeman (Vien's co-defendants[2]) bought the lot from Vien in 2005 to build a house. They asked him to take it back a year later after learning that the property was prone to flooding, and he did.

While the Freemans owned the land, Phillip constructed or improved[3] a driveway on their property. He installed a twenty-four-inch culvert near Greathouse Road for drainage during the initial construction. He installed a second culvert for better drainage at Vien's request a few weeks after selling the property back to Vien.

Heavy rains in 2004 inundated the vacant lot, and the water slightly encroached on the Del Buonos' lot. Heavy rains in March 2006 again inundated the vacant lot, but

---

[1]    Vien is a real estate agent.

[2]    Although the court found the Freemans jointly and severally liable, they did not perfect an appeal.

[3]    The parties dispute whether Phillip improved an existing driveway or constructed a new one. In Finding of Fact No. 16, the court found that he "constructed" the driveway. In the final analysis, this issue is irrelevant.

this time the waters covered most of the Del Buonos' lot as well. They could not leave that morning because their driveway was under water. Photographs admitted in evidence show that the waters came very close to the edge of the house. The Del Buonos asked that the Freemans do something to alleviate the problem. Mary Del Buono testified that Phillip and another man removed the culvert with a backhoe and the waters started draining from the property "almost instant[ly]." Phillip testified that he and some men scraped a swath across the top of the road just behind the culvert. He testified that it stopped raining about when they finished. He did not know if their work helped alleviate the water on the Del Buonos' lot but assumed that it did.

The property was flooded again in March 2007 when as much as eleven inches of rain fell within 24-36 hours. This time the Del Buonos' home flooded. They went to Vien's office the next afternoon and demanded that he "break up" the driveway so the floodwaters could drain from their property. He followed them to the property where they showed him the damage to their home. He told them he would try to get a "tractor man" to come and break up the driveway, but he never did.

The water level got as high as twelve to eighteen inches inside the Del Buonos' home, causing substantial damage. They removed the furniture and flooring. However, they did not attempt to repair the sheetrock or other interior damage. They have lived in a travel trailer on their driveway ever since.

The Del Buonos filed suit alleging that the negligence of the Freemans and of Vien proximately caused their damages. They alleged that the Freemans were negligent for constructing "an elevated drive" that "recontoured and reconstructed the elevation

and flow and/or drainage of water across their property." They alleged that Vien was negligent by failing to take action to rectify this problem even though he was "aware of the diversion of water from his property to that of the Plaintiffs."

Vien answered with a general denial; asserted as affirmative defenses: (1) the acts or omissions of the Del Buonos or a third party were the sole or partial cause of the damages; (2) the Del Buonos failed to mitigate their damages; and (3) the damages were caused in whole or part by an act of God; and further alleged that the Del Buonos were contributorily negligent. Vien also filed a cross-claim against the Freemans for contribution because they "did not fully disclose the effects of the driveway."

The court found in favor of the Del Buonos and awarded $112,215 in damages. The court denied Vien's cross-claim and also denied the Del Buonos claim for exemplary damages.

## Duty

Vien contends in his first issue that he owed no legal duty to the Del Buonos.[4] Specifically, he argues: (1) the Del Buonos never specified in their pleadings what duty he owed them; (2) the trial court failed to enter a conclusion of law regarding what duty the court determined he owed them; (3) the Del Buonos' home was damaged by flood waters, rather than surface waters; and (4) the State has a non-delegable duty to control flood waters.

---

[4] The elements of a negligence claim are a duty, a breach of that duty, and damages proximately caused by the breach. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

Vien did not specially except to the Del Buonos' pleadings. Thus, he has waived the right to complain of any failure on their part to plead what legal duty he owed them. *See* TEX. R. CIV. P. 90; *Tex. Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 398 (Tex. App.—Dallas 2000, pet. denied).

Although Vien filed a request for additional findings of fact and conclusions of law, he did not request an additional conclusion of law on the issue of duty. If a party fails to request an additional finding of fact or conclusion of law on a particular issue, the party has waived its right to challenge the absence of an express finding or conclusion regarding that issue on appeal. *Smith v. Smith*, 22 S.W.3d 140, 149 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see* TEX. R. CIV. P. 298.

*Surface Water*

Surface water is that "which is diffused over the ground from falling rains or melting snows, and [it] continues to be such until it reaches some bed or channel in which water is accustomed to flow." *Tex. Women's Univ. v. Methodist Hosp.*, 221 S.W.3d 267, 278 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *Dietrich v. Goodman*, 123 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2003, no pet.)); *accord Dalon v. City of DeSoto*, 852 S.W.2d 530, 538 (Tex. App.—Dallas 1992, writ denied). The Supreme Court has defined surface water thusly:

> Under both the common law and the Mexican civil law, the owners of the soil on which rains may fall and surface waters gather are the proprietors of the water so long as it remains on their land, and prior to its passage into a natural water course to which riparian rights may attach.

*Turner v. Big Lake Oil Co.*, 128 Tex. 155, 96 S.W.2d 221, 228 (1936); *see Lewis v. Tex. Utils. Elec. Co.*, 825 S.W.2d 722, 724 (Tex. App.—Dallas 1992, writ denied) ("A private landowner has the right to control, retain, and use surface waters."). "[T]he chief characteristic of 'surface water' is that it does not follow a defined course or channel and does not gather into or form a natural body of water." *Tex. Women's Univ.*, 221 S.W.3d at 278 (quoting *Dietrich*, 123 S.W.3d at 419); *see Dalon*, 852 S.W.2d at 538.

Conversely, "floodwaters are those which, generally speaking, have overflowed a river, stream or natural water course and have formed a continuous body with the water flowing in the ordinary channel." *Tex. Women's Univ.*, 221 S.W.3d at 278 (quoting *Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern, L.L.P.*, 174 S.W.3d 254, 258 (Tex. App.—Houston [1st Dist.] 2004, no pet.)); *see Raburn v. KJI Bluechip Invs.*, 50 S.W.3d 699, 704 (Tex. App.—Fort Worth 2001, no pet.) ("Flood waters are waters above the regular flow of a stream."); *Lewis*, 825 S.W.2d at 724 (same). "Ownership of flood waters, and the duty to control such waters, is vested in the State and its political subdivisions." *Lewis*, 825 S.W.3d at 724 (citing TEX. CONST. art. XVI, § 59); *accord Tex. Woman's Univ.*, 221 S.W.3d at 278.

Thus, surface waters are waters from precipitation which migrate across land until they evaporate, are absorbed, or reach a water course. Flood waters, by contrast, are waters which overflow a water course but flow with the waters in that water course. By definition, surface waters are not flood waters. *See Lewis*, 825 S.W.2d at 724; *see also Citizens Against Landfill Location v. Tex. Comm'n on Envt'l Quality*, 169 S.W.3d 258, 274 (Tex. App.—Austin 2005, pet. denied) ("Diffuse surface water belongs to the owner of

the land on which it gathers, so long as it remains on that land prior to its passage into a natural watercourse").

Vien argues that the waters which damaged the Del Buonos' home were "flood waters" which the State has a non-delegable duty to control. To support this argument, he relies on the testimony of two experts who both referred to the land in that area as a watershed. According to Vien, this watershed forms a watercourse, and the waters flowing in this watercourse are by definition flood waters. We disagree.

Although they did refer to the area as a watershed, neither of the experts went further and opined that it was also a watercourse. For example, Jerry Ince testified that the Del Buonos' property (and Vien's) "is at the confluence of the bottom of the [240-acre] watershed." Waters from that watershed typically drain into a culvert beside Greathouse Road. A "pond sits on that 240-acre watershed, and when the driveway was built behind to extend it behind the spillway [sic], now it removed that watershed from the road to that driveway." Thus, Ince testified that the construction of the driveway altered the natural flow of waters across the watershed. But Ince did not characterize the watershed as a watercourse. And we hold as a matter of law that it is not. *See Tex. Woman's Univ.*, 221 S.W.3d at 279 ("Opinions from our sister courts suggest that a watershed itself does not constitute a watercourse.") "Otherwise, as soon as rain hit 'any piece of land,' the rain would automatically lose its classification of diffused surface water." *Id.*; *see also Hoefs v. Short*, 114 Tex. 501, 273 S.W. 785, 787 (1925) ("in order to constitute a water course, there must be something more than mere surface drainage over the entire face of a tract of land").

*Duty Owed*

Under the common law, adjoining landowners have interrelated rights and duties with regard to surface water. The landowner whose property lies at a higher elevation cannot "burden adjacent lands with surface water he accumulate[s] or discharge[s] except in the same manner in which it would naturally flow; and the lower estate [i]s obliged to receive the surface waters as they naturally flow[ ]." *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606, 610 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (citing *Kraft v. Langford*, 565 S.W.2d 223, 228 (Tex. 1978)). As the Supreme Court stated in *Kraft*, "a landowner rule [can]not burden adjacent lands with surface water he accumulate[s] or discharge[s] except in the same manner in which it would naturally flow." *Kraft*, 565 S.W.2d at 228; *see also Bunch v. Thomas*, 121 Tex. 225, 49 S.W.2d 421, 423 (1932) ("a landowner cannot collect surface water into an artificial shannel [sic] or volume, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter").[5]

Focusing in particular on the lower landowner (here, Vien), Texas courts have characterized the obligation to receive surface waters as they naturally flow as a legal duty. *See, e.g., Stukes v. Bachmeyer*, 249 S.W.3d 461, 466 (Tex. App.—Eastland 2007, no pet.); *Cain v. Rust Indus. Cleaning Servs., Inc.*, 969 S.W.2d 464, 469 (Tex. App.—Texarkana 1998, pet. denied); *Jefferson County Drainage Dist. No. 6 v. Lower Neches Valley Auth.*, 876

---

[5]     Section 11.086 of the Water Code imposes a similar statutory duty on landowners. *See* TEX. WATER CODE ANN. § 11.086(a) (Vernon 2008); *Kraft v. Langford*, 565 S.W.2d 223, 229 (Tex. 1978); *Boatman v. Lites*, 970 S.W.2d 41, 44 (Tex. App.—Tyler 1998, no pet.); *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606, 610 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). However, the Del Buonos did not plead a statutory cause of action.

S.W.2d 940, 950 (Tex. App.—Beaumont 1994, writ denied); *see also Wilson v. Hagins*, 50 S.W.2d 797, 799 (Tex. Comm'n App. 1932, judgm't adopted) (lower landowners "owe a service" to receive surface waters); *Cone v. City of Lubbock*, 431 S.W.2d 639, 649 (Tex. Civ. App.—Amarillo 1968, writ ref'd n.r.e.) (same). Thus, Vien owed a common law duty to the Del Buonos to allow surface waters to flow across his property without hindrance.

The waters which inundated the Del Buonos' home were surface waters not flood waters. Therefore, the State owed no duty to regulate the flow of those waters, and Vien owed a duty to the Del Buonos to allow those waters to flow across his property without hindrance. Accordingly, we overrule Vien's first issue.

### Foreseeability

Vien contends in his second issue that the evidence is legally and factually insufficient to support the court's implied finding of foreseeability.

For a legal insufficiency review, we must determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.*

For a factual insufficiency review, reversal is required only if the challenged finding is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Byrd v. Estate of Nelms*, 154 S.W.3d 149, 156-57 (Tex. App.—Waco 2004, pet. denied) (quoting *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

Foreseeability is one of the two sub-elements of proximate cause. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Foreseeability "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *accord Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 463 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "A danger is foreseeable if its general character might reasonably be anticipated, if not its precise manner." *Barton*, 276 S.W.3d at 463; *accord Doe*, 907 S.W.2d at 478.

Here, the trial court made the following findings of fact pertinent to the foreseeability issue:

> 12. The Court further finds that Defendants Freeman had actual and direct knowledge that the changes made by Defendants Freeman had caused flooding on Plaintiff's [sic] property prior to the damage suffered by Plaintiffs.
>
> 13. The Court finds that Defendants Freeman informed Defendant Vien of the problems caused by Defendants Freeman prior to Defendant Vien's purchase of the property from Defendants Freeman.

Mary Del Buono testified that when the Freemans purchased their lot in 2005 she informed them the property had some "drainage issues" and gave them some pictures depicting the flooding in 2004. The Freemans personally observed the water on the Del Buonos' lot in 2006 when the rainwaters covered most of their lot and came close to their house.

Sheree Freeman testified that she told Vien they wanted him to take the lot back because "the place floods. We can't build a house here." She told him that the Del

Buonos had threatened to sue because of the incident in 2006.  As part of the negotiations for Vien to repurchase the property, he asked them to install a second culvert under the driveway.

This evidence is such as "would enable reasonable and fair-minded people" to find that it was foreseeable the driveway on Vien's lot would cause the Del Buonos' home to be flooded in a heavy rainstorm.  *See Tex. Woman's Univ.*, 221 S.W.3d at 284; *see also City of Keller*, 168 S.W.3d at 827.  Thus the evidence is legally sufficient to support the court's implied finding on the issue of foreseeability.

The contrary evidence is that their home had not flooded during the heavy rains in 2004 or 2006.  In addition, Vien denied that the Freemans warned him of any flooding problems.  Nevertheless, we conclude that the implied finding of foreseeability is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."  *See Byrd*, 154 S.W.3d at 156-57.  Thus, we overrule Vien's second issue.

### Act of God

Vien complains in his third issue that the evidence is legally and factually insufficient to support the court's implied rejection of his defensive theory that the flooding of the Del Buonos' home was an act of God.

"An occurrence is caused by an act of God if it is caused directly and exclusively by the violence of nature, without human intervention or cause, and could not have been prevented by reasonable foresight or care."  *Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 432 n.5 (Tex. 2005) (quoting COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE & INTENTIONAL PERSONAL TORTS

PJC 3.5 (2003)). "[W]hat is meant by allusion to the absence of human intervention is not the absence of all human involvement but the absence of human negligence proximately causing the injury." *McWilliams v. Masterson*, 112 S.W.3d 314, 321 (Tex. App.—Amarillo 2003, pet. denied).

The Del Buonos' expert, Ince, testified that in his opinion the elevated driveway was a proximate cause of the flooding of their house. Vien's expert James McDill stated in his report, "There is no denying that the installation of a 24" corrugated metal pipe culvert, combined with the existing driveway, created an obstruction which allowed floodwaters into the DEL BUONO HOUSE in March of 2007." He further opined that, if the elevated driveway did not obstruct the ditch running along Greathouse Road, "there is a more than reasonable chance that these floodwaters from this particular storm would have also backed up into the DEL BUONO HOUSE." During cross-examination, McDill agreed that "the driveway is the culprit here, not the culvert." He also testified that the driveway and culvert "were the conditions that created allowance of the flood waters into the Del Buono house."

The experts agreed that the elevated driveway caused the Del Buonos' home to flood. This evidence is such as "would enable reasonable and fair-minded people" to reject the defensive theory that the flooding was caused "directly and *exclusively* [by] natural causes, without human intervention." *See Macedonia Baptist Church v. Gibson*, 833 S.W.2d 557, 560 (Tex. App.—Texarkana 1992, writ denied) (emphasis added).

The only contradictory evidence Vien refers to is the unusual severity of flooding experienced by Ellis County during this storm. The county was declared a disaster area

by the governor, and that precinct was purportedly "the hardest hit."[6]  While acknowledging the unusual severity of the flooding, we cannot say that the court's implied rejection of the act of God theory is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."  *See Byrd*, 154 S.W.3d at 156-57.  Thus, we overrule Vien's third issue.

## Failure to Mitigate Damages

Vien argues in his fourth issue that the evidence is legally insufficient to support the court's implied rejection of his defensive theory that the Del Buonos failed to mitigate their damages.[7]

A plaintiff must mitigate his damages if he can do so with "trifling expense or with reasonable exertions."  *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 857 (Tex. 1999) (quoting *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995)).  The defendant bears the burden of proof on this issue and must show the extent to which damages were increased by the failure to mitigate.  *Young v. Thota*, 271 S.W.3d 822, 830 (Tex. App.—Fort Worth 2008, pet. denied); *see Alamo Cmty. Coll. Dist. v. Miller*, 274 S.W.3d 779, 788 (Tex. App.—San Antonio 2008, no pet.).

The court admitted two repair estimates tendered by the Del Buonos.  The first was prepared by Stanley Restoration in April 2007 and estimated total cost of repair and restoration to be $37,200.  Mary testified that this estimate was based on replacing the

---

[6]    According to a newspaper report offered in evidence, the roads in that precinct were "the most affected" by the heavy rains.

[7]    Vien specifically contends that the evidence conclusively establishes that the Del Buonos failed to mitigate their damages.  This is a legal-insufficiency claim.  *See Hunter v. Ford Motor Co.*, 305 S.W.3d 202, 205 (Tex. App.—Waco 2009, no pet.).

lower two feet of sheetrock throughout the house in addition to flooring and other necessary repairs. She also testified that they could not afford to pay for this, so they instead pulled out the carpet and other flooring. Mark Del Buono testified that Mr. Doyle from Stanley Restoration advised them not to remove the water-soaked sheetrock. Rather, they were advised to keep air circulating through the house with fans and spray the walls with bleach to minimize the chance of mold forming, and they followed these recommendations. Mark likewise testified that they could not afford to have the repairs done that were recommended by Stanly Restoration. Mark and Mary both testified that they were concerned about their daughter's asthma and did not want to open up the walls by removing sheetrock because it might exacerbate her condition.

Mold did form in the house, and the second estimate took this into account, requiring the removal and replacement of all the sheetrock and other steps to remediate the mold growth. The second estimate, prepared by Southland Construction Company in January 2009, estimated total costs of restoration and remediation to be $83,700.

Vien argued at trial and contends on appeal that the Del Buonos should have mitigated their damages by removing the water-soaked sheetrock.[8]

From the evidence, "reasonable and fair-minded people" could have found that: (1) the Del Buonos could not afford to have the sheetrock removed as Vien contends they should have; (2) they reasonably followed Mr. Doyle's advice in this regard; (3) they were not equipped to remove the sheetrock themselves; and (4) removal of the

---

[8] Vien also suggests that the Del Buonos' failure to inform him of their intentions regarding the repair of their home and their failure to purchase flood insurance are relevant to this issue. However, he does not direct us to any legal authorities to support this contention, and our research has disclosed none.

sheetrock would have required more than mere "trifling expense" or "reasonable exertions." *See Gunn Infiniti*, 996 S.W.2d at 857; *Mondragon v. Austin*, 945 S.W.2d 191, 195 (Tex. App.—Austin 1997, no pet.). Thus, the evidence is legally sufficient to support the court's implied rejection of the defensive theory that the Del Buonos failed to mitigate their damages.

Vien argues in his brief that he is entitled to rendition of judgment on this issue, because the evidence (as he views it) conclusively establishes that the Del Buonos failed to mitigate their damages. We have rejected this contention. He argues in the alternative that the case should be reversed and remanded "for a proper determination of damages taking into account the Del Buonos' failure to mitigate." We construe this as a request to remand for a fact finder to determine how much of the Del Buonos' damages could have been avoided if they had removed the sheetrock as he contends they should have.

Vien bore the burden of proving the extent to which the Del Buonos' damages were increased by the failure to mitigate. *See Young*, 271 S.W.3d at 830. Even if we were to conclude that the evidence supports Vien's assertion that they should have removed the water-soaked sheetrock, Vien did not conclusively establish that the additional costs identified in the subsequent repair estimate were due solely to their failure to remove the sheetrock. Nor did he request a finding on this issue. *See Estate of Clifton v. S. Pac. Transp. Co.*, 709 S.W.2d 636, 638-39 (Tex. 1986) (defendant not entitled to remand where it failed to request additional deliberation for finding on co-defendant's percentage of responsibility); *Kansas City S. Ry. v. Mo. Pac. R.R.*, No. 09-06-00255-CV, 2008 Tex. App.

LEXIS 5330, at *11-13 (Tex. App.—Beaumont July 17, 2008, pet. denied) (mem. op.) (defendant failed to preserve its factual sufficiency complaints by failing to request additional findings of fact).

Accordingly, we overrule Vien's fourth issue.

### Proper Measure of Damages

Vien contends in his fifth issue that the court failed to use the proper measure of damages with regard to the court's award of $12,500 for the contents of the home. Although Vien contends that the court used the wrong measure of damages, his contention really is that the Del Buonos "did not submit evidence at trial of the loss in market value of their furniture."

Vien suggests that the proper measure of damages is the diminution in market value. However, a different measure applies for household furniture and other contents which have no recognized market value.

> The law of damages distinguishes between marketable chattels possessed for purposes of sale and chattels possessed for the comfort and well-being of their owner. In the instance of the former it judges their value by the market price. In the instance of the latter it measures their loss, not by their value in a secondhand market, but by the value of their use to the owner who suffers from their deprivation. The latter measure is employed in the case of household furniture, family records, wearing apparel, personal effects, and family portraits.

*Allstate Ins. Co. v. Chance*, 590 S.W.2d 703, 703 (Tex. 1979) (per curiam) (quoting *Crisp v. Sec. Nat'l Ins. Co.*, 369 S.W.2d 326, 329 (Tex. 1963)); *see Gulf State Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Burns v. Rochon*, 190 S.W.3d 263, 270 (Tex. App.—Houston [1st Dist.] 2006, no pet.). More succinctly, "[t]he measure of damages for the destruction

of such items is the 'actual worth or value of the articles to the owner for use in the condition in which they were at the time of [the injury] excluding any fanciful or sentimental considerations.'" *Gulf State Utils.*, 79 S.W.3d at 566 (quoting *Crisp*, 369 S.W.2d at 328).

"It is well settled that a property owner may opine about the property's value." *Id.*; *Burns*, 190 S.W.3d at 270-71. "[T]he trier of fact may consider, in determining the actual value to the owner at time of loss, the original cost, cost of replacement, opinions of qualified witnesses, including the owner, the use to which the property was put, as well as any other reasonably relevant facts." *Gulf State Utils.*, 79 S.W.3d at 566 (quoting *Allstate Ins. Co.*, 590 S.W.2d at 704). "[T]he jury has discretion to award damages within the range of evidence presented at trial." *Id.* (citing *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 352 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

The Del Buonos testified and presented documentary evidence that the value of the household contents that were permanently damaged by the floodwaters was approximately $26,000.[9] Vien is correct that they referred to these valuations inconsistently as either market value or replacement cost. Vien cross-examined them about the basis for their valuations, but he presented no evidence suggesting a different value.

The court's award of $12,500 in damages for household contents was "within the range of evidence presented at trial." *Id.*; *see Burns*, 190 S.W.3d at 270-71; *Hironymous v.*

---

[9] Plaintiffs' Exhibit No. 8 is an itemized list of the household contents divided by room with subtotals included for the damaged items in each room (and a barn on the property). According to our calculations, the total loss indicated (including the contents of the barn) is $25,917.54. Mary testified that the total loss was $25,931.65.

*Allison*, 893 S.W.2d 578, 582-83 (Tex. App.—Corpus Christi 1994, writ denied). Accordingly, we overrule Vien's fifth issue.

## Contribution

Vien claims in his sixth issue that the court erred by concluding that he is not entitled to "contribution and/or indemnity from the Freemans."[10]

The judgment decrees that Vien and the Freemans are jointly and severally liable for the Del Buonos' damages.[11] The judgment denied Vien's cross-claim against the Freemans for contribution. In Finding of Fact No. 1, the court similarly found them jointly and severally liable and that Vien is not entitled to contribution. In Finding of Fact No. 16, the court found that Vien is not entitled to contribution because he "was aware of the flooding problem caused by the road constructed by Defendant Freeman prior to the purchase from Defendants Freeman."

Vien cites section 33.016 of the Civil Practice and Remedies Code as the basis for relief. Section 33.016 applies to claims against a "contribution defendant," which is a

---

[10] The terms contribution and indemnity are often used interchangeably, but they do not mean the same thing. *See* George C. Hanks, Jr., *Contribution and Indemnity after HB 4*, 67 TEX. B.J. 288, 289 (2004). Contribution refers to the payment by each tortfeasor of his proportionate share of the plaintiff's damages. *See* Gus M. Hodges, *Contribution and Indemnity Among Tortfeasors*, 26 TEX. L. REV. 150, 150 (1947). Conversely, indemnity refers to the "shifting [of] the entire burden of loss from one tortfeasor to another." *B & B Auto Supply, Sand Pit & Trucking Co. v. Cent. Freight Lines, Inc.*, 603 S.W.2d 814, 816 (Tex. 1980). Because of Texas's proportionate responsibility statutes, "the common law right of indemnity is no longer available between joint tortfeasors in negligence cases." *Id.* at 817.

[11] Other than an intentional tortfeasor whose conduct violates one of fourteen penal statutes listed in section 33.013(b)(2), a defendant may be found jointly and severally liable only if his percentage of responsibility is found to be greater than fifty percent. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.013(b) (Vernon 2008). Under this general principle of joint and several liability, it is mathematically possible for only one defendant to be jointly and severally liable. *See Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 298 S.W.3d 216, 233 (Tex. App.—San Antonio 2009, pet. denied). Thus, it was improper for the court to find both Vien and the Freemans jointly and severally liable. However, the Freemans have not perfected their own appeal.

defendant "from whom the claimant seeks no relief at the time of submission."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.016 (Vernon 2008).  Here, however, the Del Buonos sought relief against both the Freemans and Vien, and the court found them both liable.  Thus, section 33.016 does not apply.

Instead, section 33.015 governs contribution as between defendants who are parties to the judgment.  *Id.* § 33.015 (Vernon 2008).  A defendant's right of contribution is based on the respective percentage of responsibility assigned to each party.  *Id.*  However, Vien did not seek a finding on the respective percentages of responsibility for each party.  Vien's failure to seek such a finding results in a waiver of any error in the denial of his cross-claim for contribution.  *See Estate of Clifton*, 709 S.W.2d at 638-39; *Kansas City S. Ry.*, 2008 Tex. App. LEXIS 5330, at *11-13.  Accordingly, we overrule Vien's sixth issue.

Having overruled the issues presented, we affirm the judgment.


FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed November 10, 2010
[CV06]